## WALTER EDWARD BROADWAY *v.* STATE OF MARYLAND

[No. 877, September Term, 1973.]

*Decided October 15, 1974.*

The cause was argued before ORTH, C. J., and POWERS and DAVIDSON, JJ.

*James P. Salmon, Assigned Public Defender,* with whom was *Edward P. Camus, District Public Defender,* on the brief, for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County* and *Richard P. Arnold, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

On 9 January 1973 an indictment was filed in the Circuit Court for Prince George's County against WALTER EDWARD BROADWAY [1] charging him in the first count with robbery with a deadly weapon and in eight other counts with related offenses, including under the ninth count that he unlawfully used a handgun in the commission of a crime of violence. When the indictment came on for trial on 10 April 1973, Broadway filed a motion to dismiss it. The ground for the motion was that he was 17 years of age on 6 December 1972, the date of the commission of the crimes. He claimed that the juvenile court had original jurisdiction over him, and had not waived it. Upon a hearing on the motion, at which it was stipulated that Broadway was born on 10 November 1955, the motion was denied. Broadway noted an appeal from the denial, but dismissed it on 11 May 1973. He was tried before a jury and on 14 September 1973 was found

1. Broadway was jointly indicted with Secret Nathaniel Williams, III and Russell Andrew Lane, Jr. They were separately tried.

guilty under the first and ninth counts. Upon receipt of a pre-sentence report he was sentenced on 16 October to 11 years on the robbery conviction and to a consecutive sentence of 5 years on the handgun violation. He filed a timely appeal.

I

Broadway's first two contentions attack the propriety of the denial of his motion to dismiss the indictment.

Chapter 514, Acts 1972, § 1, effective 1 July 1972, codified as Code, Art. 26, § 70-2 (d) (3), designated an additional exemption in the general law to the exclusive original jurisdiction of a juvenile court. It provided that the court does not have jurisdiction over "A proceeding involving a child who has reached his sixteenth birthday, alleged to have done an act in violation of § 488 of Article 27 concerning the crime of robbery with a deadly weapon, unless an order removing the proceeding to the juvenile court has been filed pursuant to § 594A of Article 27." Chapter 772, Acts 1973, effective 1 July 1973, amended the exemption to read:

> "A proceeding involving a child who has reached his sixteenth birthday, alleged to have done an act which, if committed by an adult, would be punishable by § 488 of Article 27 as robbery with a deadly weapon, unless an order removing the proceeding to the juvenile court has been filed pursuant to § 594A of Article 27." [2]

The exemption now appears in the Courts and Judicial Proceedings Article (Courts Art.) as § 3-808 (4) in these words:

---

2. Code, Art. 27, § 594A, as amended by ch. 514, § 2, Acts 1972, effective 1 July 1972, provides:

"In any case involving a child who has reached his fourteenth (14th) birthday but has not reached his eighteenth (18th) birthday at the time of any alleged offense excluded under the provisions of § 70-2 (d) (1) or (3) of Article 26, the court exercising jurisdiction may transfer the case to the juvenile court if a waiver is believed to be in the interests of the child and/or society."

See Code, Art. 1, § 21.

"The court does not have jurisdiction over:

* * *

(4) A child 16 years or older alleged to have committed the crime of robbery with a deadly weapon, unless an order removing the proceeding to the juvenile court has been filed pursuant to § 594A of Article 27."

The Revisor says in his note: "Paragraph (4) reflects the change made by ch. 772, Acts of 1973, clarifying the language concerning jurisdiction over the crime of robbery with a deadly weapon."

(i)

Broadway first argues, as he argued below, that the exemption as in effect at the time he was indicted was "so uncertain, incomplete, or conflicting" that it cannot be executed and must be "declared inoperative and void." The premise of this argument is that Code, Art. 27, § 488 does not create a substantive crime but only authorizes a penalty for the common law crime of robbery more severe when the robbery is committed with a deadly weapon than when it is not.[3] He cites as authority for the premise the decisions of this Court — *McChan v. State,* 9 Md. App. 311, 315; *Parker v. State,* 7 Md. App. 167, 197; *Barnes v. State,* 5 Md. App. 144, 146; *Jones v. State,* 3 Md. App. 608, 613; *Darby v. State,* 3 Md. App. 407, 413. Therefore, he posits, he could not have been "alleged to have done an act in violation of § 488 of Article 27" because the statute creates no offense to be violated. It follows that the exemption is meaningless and the juvenile court had exclusive original jurisdiction over him which it did not waive. Thus, he claims, the indictment was improperly returned, he cannot be tried under it, and it should have been dismissed.

---

3. Code, Art. 27, § 488 provides:

"Every person convicted of the crime of robbery or attempt to rob with a dangerous or deadly weapon or accessory thereto, shall restore to the owner thereof the thing robbed or taken, or shall pay him the full value thereof, and be sentenced to imprisonment in the Maryland Penitentiary for not more than twenty years."

The argument gave the lower court no pause, and it gives us none. The court below found the clear legislative intent to have been that a child of 16 years or older, alleged to have committed the crime of robbery with a deadly weapon, is without the jurisdiction of the juvenile court. We are in complete agreement. It may be that the statute as originally enacted could have been more artfully drafted, but the legislative intent, as obviously demonstrated by the subsequent clarifying amendments, was clear and unambiguous. We note that all presumptions favor the constitutionality of a duly enacted statute, and it will not be declared unconstitutional unless it plainly contravenes the federal or state constitution. *Woodell v. State,* 2 Md. App. 433. We said in *Bacheller v. State,* 3 Md. App. 626, 632: "The formulation of statutory language is, at best, an inexact exercise vulnerable to varying degrees of doubt and ambiguity. Therefore, the enunciation of the meaning and ambit of a specific statute by judicial construction strives to ascertain and define the legislative intent and purpose, and upon making of a determination of the legislative meaning the efficacy of the statute is more clearly and precisely promulgated." As indicated, we have no doubt here of the legislative intent and purpose. We hold that the statute was not unconstitutionally vague or indefinite. See *Anderson v. State,* 12 Md. App. 186.

(ii)

Broadway's second contention [4] follows the rationale of our decision in *Matter of Trader,* 20 Md. App. 1. Under the public general law an order waiving juvenile jurisdiction is interlocutory and not immediately appealable. Under the public local law applicable to Montgomery County such an order is final and immediately appealable. We held the public general law to be void because the differences between the public general law and the public local law mounted up to an invidious discrimination violative of the

4. The issue presented by the second contention was not tried and decided below, but Broadway claims that it is jurisdictional and thus can be raised at any time under Maryland Rule 1085.

equal protection clause of the constitution. The Court of Appeals on grant of certiorari to this Court did not see it that way on the record submitted. It said: "Since no evidence was adduced in the proceedings below to demonstrate the lack of a reasonable basis for the statutory distinction, and since the difference in treatment is not so irrational as to be invidiously discriminatory on its face, we hold on the record in Trader's case that he was not denied equal protection of the laws by reason of the provisions of § 3-817 of the public general law declaring that a waiver is interlocutory." *Matter of Trader*, 272 Md. 364. In its *Trader* opinion the Court of Appeals decided three other cases spinning off of our *Trader* holding.[5] One of them, *State v. Stokes*, is determinative of Broadway's contention. We give its factual posture in the words of the Court of Appeals, *Matter of Trader*, 272 Md., at 375, 376:

> "Appellee Stokes was charged with armed robbery in the Criminal Court of Baltimore; he was then 16 years old. He moved to dismiss the indictment on the ground that § 3-808(4) of the public general law, excluding a child 16 years or older from the juvenile jurisdiction of the court, was unconstitutional because no similar provision exempted children from treatment as juveniles under the Montgomery County law. The court (Liss, J.), relying principally upon *Matter of Trader, supra,* granted the motion to dismiss, holding § 3-808(4) violative of the equal protection clause. * * * The court concluded as a matter of constitutional law 'that whenever any substantial right or privilege is granted to a juvenile in Montgomery County, all other juveniles in the State are entitled to the same right or privilege.' The State appealed the dismissal of Stokes' indictment to the Court of Special Appeals; we granted certiorari prior to decision by the Court of

---

5. *State of Maryland v. Emmit W. Stokes* and *Matter of Roger Faulkner* were docketed as No. 32, September Term, 1974. *Matter of Calvin Thomas* was docketed as No. 54, September Term, 1974.

Special Appeals upon the State's petition seeking our review of the judgment of the Criminal Court of Baltimore."

The Court of Appeals said, at 401, 402:

"As in *Matter of Trader*, the record before us in *Stokes* contains no evidence to support the trial judge's conclusion that no state of facts conceivable exists to justify the treatment of a 16-year-old child who commits armed robbery as an adult offender under the public general law while requiring a similarly situated child under the Montgomery County law to be waived before becoming subject to criminal prosecution. Nothing in *Long v. Robinson* [316 F. Supp. 22 (D. Md. 1970), affirmed in *Long and Robinson*, 436 F. 2d 1116 (4th Cir. 1971)] compels such a result and we reject the notion espoused by the trial judge in *Stokes* 'that whenever any substantial right or privilege is granted to a juvenile in Montgomery County, all other juveniles in the State are entitled to the same right or privilege.' The difference in treatment afforded 16-year-old armed robbers by the two laws is not, on its face, so irrational and invidiously discriminatory as to constitute a denial of the equal protection clause, particularly in view of the reverse waiver provisions contained in the public general law. In the absence of the requisite showing of unconstitutionality by the party attacking the legislative classification, it cannot be said that it does not rest upon *any* reasonable basis."

As in *Stokes*, the requisite showing of unconstitutionality by the party attacking the legislative classification was here absent. We hold that the court below did not err in denying the motion to dismiss the indictment.

## II

By ch. 13, Acts 1972 [6] the General Assembly devised a scheme to curb the commission of violent crimes involving the use of handguns.[7] To effectuate its declared policy [8] it met the problem in two ways. First, it attempted to curtail the ready accessibility of handguns, and second, it discouraged the use of them in the commission of crimes. With respect to the first, it made the wearing, carrying, or transporting of handguns a misdemeanor and fixed penalties to be imposed upon conviction of the misdemeanor. Code, Art. 27, § 36B (b). Subsection (b) provided, *inter alia*:

> "Any person who shall wear, carry, or transport any handgun, whether concealed or open, upon or about his person, and any person who shall wear, carry or knowingly transport any handgun, whether concealed or open, in any vehicle traveling upon the public roads, highways, waterways, or airways or upon roads or parking lots generally

6. The statute was approved 27 March 1972 and was effective from the date of passage. It is codified as Art. 27, §§ 36B-36F, under the subheading "Handguns".

7. "The term 'handgun' as used in this subheading shall include any pistol, revolver, or other firearm capable of being concealed on the person, including a short-barreled shotgun and a short-barreled rifle as these terms are defined below, except it shall not include a shotgun, rifle or antique firearm as those terms are defined below." Code, Art. 27, § 36F (a). "Antique firearm", "rifle", "short-barreled shotgun", "short-barreled rifle", and "shotgun" are defined in sub-subsections (1), (2), (3), (4), and (5), repectively, of subsection (a), section 36F.

8. The policy is declared in Code, Art. 27, § 36B (a):

"The General Assembly of Maryland hereby finds and declares that:

(i) There has, in recent years, been an alarming increase in the number of violent crimes perpetrated in Maryland, and a high percentage of those crimes involve the use of handguns;

(ii) The result has been a substantial increase in the number of persons killed or injured which is traceable, in large part, to the carrying of handguns on the streets and public ways by persons inclined to use them in criminal activity;

(iii) The laws currently in force have not been effective in curbing the more frequent use of handguns in perpetrating crime; and

(iv) Further regulations on the wearing, carrying, and transporting of handguns are necessary to preserve the peace and tranquility of the State and to protect the rights and liberties of its citizens."

used by the public in this State shall be guilty of a misdemeanor; and it shall be a rebuttable presumption that the person is knowingly transporting the handgun; . . . ."

It also empowered the seizure and forfeiture of handguns, § 36C, and as an aid thereto, authorized a "limited search" in the nature of a "stop and frisk", § 36D. It authorized the Superintendent of the Maryland State Police to issue permits to carry handguns, carefully spelling out the conditions under which such permits could be issued, and designated those persons authorized to wear or carry a handgun without a permit, § 36E.

With respect to the second way the General Assembly attempted to effectuate its declared policy, it created the separate offense of using a handgun in the commission of certain crimes and specified a mandatory sentence. See *Bremer v. State*, 18 Md. App. 291. Section 36B (d) provides:

"Any person who shall use a handgun in the commission of any felony or any crime of violence as defined in § 441 of this article, shall be guilty of a separate misdemeanor and on conviction thereof shall, in addition to any other sentence imposed by virtue of commission of said felony or misdemeanor; be sentenced to the Maryland Division of Correction for a term of not less than five nor more than fifteen years, and it is mandatory upon the court to impose no less than the minimum sentence of five years." [9]

Finally, the General Assembly expressly pre-empted the right of regulation in such matters.[10]

---

9. As defined in Code, Art. 27, § 441 (e), "The term 'crime of violence' means abduction; arson; burglary, including common-law and all statutory and storehouse forms of burglary offenses; escape; housebreaking; kidnapping; manslaughter, excepting involuntary manslaughter; mayhem; murder; rape; robbery; and sodomy; or an attempt to commit any of the aforesaid offenses; or assault with intent to commit any other offense punishable by imprisonment for more than one year."

10. Section 6 of ch. 13, provided that "all restrictions imposed by the law, ordinances, or regulations of the political subdivisions on the wearing, carrying, or transporting of handguns are superseded by this Act, and the

(i)

As we have indicated, Broadway was convicted of robbery with a deadly weapon and with violation of Code, Art. 27, § 36B (d). The victim of the robbery was George VanDuzer, in charge of the 4:00 to 11:00 p.m. shift at a gas station. He testified that shortly after 11:00 p.m. on 6 December 1972 he was sitting at his desk in the station sorting the money collected during the shift. Two men were at the cigarette machine and complained that it was not working. When VanDuzer said he had nothing to do with the machine, one of the men pointed a chrome plated revolver at him and told the other man to take the money. The other man, positively identified in court by VanDuzer as Broadway, took the money. Both men fled. The testimony of VanDuzer was legally sufficient to establish the *corpus delicti* of the felony of robbery with a deadly weapon and the criminal agency of Broadway therein as a principal in the first degree.[11] *Wiggins v. State,* 8 Md. App. 598, 603-604; *Ham v. State,* 7 Md. App. 474, 479; *Darby v. State,* 3 Md. App. 407, 412-414; *Agresti v. State,* 2 Md. App. 278, 280-281. VanDuzer was the only eyewitness to the robbery, and there was no evidence adduced to show that the handgun described by him was ever in the actual possession of Broadway or that Broadway had actual possession of a handgun used in the commission of the felony.

(ii)

Broadway bases his third and final contention on a construction of § 36B (d). He claims:

"In order to convict a person of violation of Article 27, Section 36B (d) the State must prove

State of Maryland hereby pre-empts the right of the political subdivisions to regulate said matters."

For other prohibitions against wearing or carrying a weapon see Code, Art. 27, §§ 36, 36A and 36A-1.

11. Broadway, although denying that he participated in the crime, concedes that the evidence adduced was sufficient in law for the jury to find him guilty of robbery with a deadly weapon as charged.

that the appellant personally used a handgun while committing a crime of violence." [12]

He presented the point below in moving for a judgment of acquittal at the close of evidence offered by the State. He renewed the motion at the close of all the evidence. The motion was denied. The point goes to the sufficiency of the evidence and was preserved for appellate review by the motion for judgment of acquittal at the close of all the evidence. Code, Art. 27, § 593; Rule 755; *Williams v. State*, 5 Md. App. 450.

The crime created by § 36B (d) is designated a misdemeanor. At common law all participants in misdemeanors are principals. 1 *Wharton's Criminal Law and Procedure*, § 104.[13] This rule is the law of Maryland. *Agresti v. State, supra,* at 280.

It was shown, as we have indicated, that Broadway was a principal in the first degree in the commission of the robbery. It was established that a handgun was used in the commission of that felony. The handgun used was in the actual possession of a co-perpetrator of the robbery, who, it is clear from the evidence, also committed the separate misdemeanor proscribed by § 36B (d). Broadway would be a principal with respect to that misdemeanor if he participated in it, abetted it, or procured it.

We do not construe § 36B (d) as does Broadway. We see

---

**12.** The statutory proscription runs not only to "any crime of violence as defined in § 441" but also to "any felony."

**13.** "So too in 'misdemeanors' and in all crimes under the degree of felony, there are no accessories either *before* or *after* the fact; but all persons concerned therein, if guilty at all, are principals; the same rule holding with regard to the highest and lowest offences, though upon different reasons." 4 *Bl. Comm.* 36.

"In misdemeanors: (a) Perpetrators, abettors and inciters are all principals, because the law 'does not descend to distinguish the different shades of guilt in petty misdemeanors.'" *Perkins on Criminal Law*, 2nd ed., p. 647.

"All persons found guilty are punishable as principals, whether present or absent, . . . in misdemanors." Clark & Marshall, *Law of Crimes*, 7th ed., § 8.04.

"All who participate in, abet or procure the commission of a misdemeanor are principals. If several act in concert, though sustaining separate parts and in different places, each is chargeable with the complete misdemeanor." *Hochheimer's Criminal Law*, 1st ed., § 30.

nothing in subsection (d) to indicate that the Legislature intended that a handgun be in the "personal possession" of a person to bring him within the ambit of its prohibitions. In its detailed and comprehensive legislative scheme, the General Assembly made clear that possession was an element of the misdemeanor created by § 36B (d), for it specified that the weapon worn, carried, or transported, whether concealed or open, be "upon or about his person" or "in any vehicle" traveling on certain roads.[14] But no such phrase appears in subsection (d). There the prohibition is against the "use" of a handgun. We think it obvious, for example, that a person who gives a handgun to another, or obtains one for him, for use in the commission of the crime, abets the misdemeanor, and as an abettor is a principal subject to the provisions of the statute. We think it equally obvious, for further example, that a person who hires another to commit the crime with a handgun, or importunes another to commit it, procures the misdemeanor, and as a procurer or inciter is a principal subject to the provisions of the statute. Here, however, there is no evidence sufficient to show that Broadway was an abettor or procurer in the frame of reference discussed, so the question is, therefore, whether he "participated" in the misdemeanor in the light of the evidence adduced.

It is correct that Broadway was not shown to have a handgun in his personal possession during the commission of the robbery. But he stole the money under its threat. He "used" the weapon to commit the robbery as effectively as if he personally held it. Just as Broadway's companion in the robbery stole the money even though he did not personally take it, Broadway used the gun in the commission of the robbery even though he did not personally hold it. To say in such circumstances that Broadway was not a participant in the use of the handgun in the commission of the robbery would be to circumvent the declared policy of the Legislature and render impotent in no small measure its

---

14. For a construction of "upon or about his person" as used in Code, Art. 27, § 36, see *Corbin v. State,* 237 Md. 486, 491; *Evans v. State,* 11 Md. App. 451, 459; *Shifflett v. State,* 3 Md. App. 550, 554.

carefully designated scheme to effectuate that policy. We find that Broadway was a participant in the misdemeanor proscribed by § 36B (d). As a participant he was a principal. As a principal he was chargeable with the misdemeanor and punishable for its commission. We hold that the court below did not err in denying the motion for judgment of acquittal.

*Judgments affirmed.*