STATE OF MARYLAND *v.* HOUSTON A. HUNT

[No. 716, September Term, 1974.]

*Decided May 29, 1975.*

418

The cause was argued before GILBERT, MENCHINE and DAVIDSON, JJ.

*Gary Melick, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Warren B. Duckett, Jr., State's Attorney for Anne Arundel County, William E. Brannan, State's Attorney for Baltimore County,* and *John A. Austin, Assistant State's Attorney for Baltimore County,* on the brief, for appellant.

*Luther C. West* for appellee.

GILBERT, J., delivered the opinion of the Court.

Houston A. Hunt, appellee, was convicted by a jury in the Circuit Court for Anne Arundel County of two kidnapping counts, an assault charge and one other charge. On appeal to this Court, *Hunt v. State,* 12 Md. App. 286, 278 A. 2d 637 (1971), *cert. denied* 263 Md. 715 (1971), we affirmed as to one kidnapping and the assault charges only.

In November, 1972, Hunt filed a petition for Post Conviction Relief under the provisions of Md. Ann. Code art. 27, § 645A. Hunt's assigned reason why he should be afforded a new trial was that he, along with six others who

were acquitted, were all represented by the same trial counsel.[1] This fact, Hunt reasoned, denied him his Sixth Amendment right to counsel and the effective assistance of counsel.

Because of the entrance of appearance and subsequent withdrawal of counsel, as well as the amendments to the petition for relief, the matter did not go to hearing in the Circuit Court for Anne Arundel County until May 2, 1974. At the conclusion of the case, Judge Matthew S. Evans determined that Hunt had indeed been the victim of a conflict of interest on the part of his trial attorney. Accordingly, Judge Evans ordered a new trial for Hunt. The State sought leave to appeal to this Court. We granted such leave and placed the matter on the regular appeal docket.

The State contends that Judge Evans erred in his ruling because:

1. "Appellee knowingly waived the contention that he was denied effective assistance of counsel."
2. "The appellee was not denied his Sixth Amendment right to effective representation by counsel."

It is here argued by the State that under the provisions of the Post Conviction Procedure Act, Md. Ann. Code art. 27, § 645A (c), any allegation that could have been made on direct appeal is deemed to have been "intelligently and knowingly" waived "unless the failure to make such allegation shall be excused because of special circumstances." The State correctly notes that the burden of proving such "special circumstances" that would excuse the application of the waiver rule rests upon the appellee. Advancing from that position the State then asserts that appellee did not raise in his direct appeal, *see Hunt v. State, supra,* any contention, whatsoever, relative to a denial of the effective assistance of counsel. Hence, as the State sees it, the appellee has waived his right to come forward with such an argument, and we should so dispose of the case.

---

1. Nine persons were charged. Seven were represented by the same attorney. Of the other two, each had his own counsel.

Hunt testified that he recognized during the course of the trial that the possibility of conflict existed when the then attorney allegedly refused to cross-examine a State witness. This being so, the State reasons, Hunt should have interposed an objection, or at the very least have challenged the matter on appeal. The fallacy in the State's approach is that Hunt used the term "possibility of conflict", thus indicating something that may or may not have been true. Furthermore, it is highly unlikely that the attorney who allegedly had a conflict of interest would have made the conflict an issue on appeal, even if the attorney had recognized that a conflict existed. We desire to make it unmistakable that we do not imply that the then counsel for Hunt was aware of a conflict. Consequently, if counsel were unaware of a conflict, and did not call it to the attention of the trial court or the appellate Court, it would stretch even credulity to hold that Hunt was bound by his counsel's failure to recognize a conflict, or having recognized it, ignoring it.

Notwithstanding the testimony of Hunt's erstwhile counsel that he saw no conflict, Judge Evans found that a conflict actually existed. The judge based his holding on *Glasser v. United States*, 315 U. S. 60, 62 S. Ct. 457, 86 L. Ed. 680 (1942) and *Brown v. State*, 10 Md. App. 215, 269 A. 2d 96 (1970). In *Glasser* an Assistant United States Attorney was charged with conspiracy to defraud the United States. The District Court Judge ordered an attorney to represent two different accuseds because of a last minute withdrawal by a counsel. Glasser stated that he preferred to have his counsel represent him, Glasser, alone, but Glasser did not object to the court's directive that the same attorney represent both accuseds. Mr. Justice Murphy, for the majority,[2] wrote with respect to a claim that Glasser had waived his objection to his attorney's also representing the accused:

"... [W]e indulge every reasonable presumption against the waiver of fundamental

---

2. Mr. Justice Frankfurter dissented and was joined therein by Chief Justice Stone. Mr. Justice Jackson took no part in the consideration of the case.

rights. . . . We are told that, since Glasser was an experienced attorney, he tacitly acquiesced in . . . [the appointment of his attorney to represent the other accused] because he failed to renew vigorously his objection at the instant the appointment was made. The fact that Glasser is an attorney is, of course, immaterial to a consideration of his right to the protection of the Sixth Amendment. . . .

Upon the trial judge rests the duty of seeing that the trial is conducted with solicitude for the essential rights of the accused. . . .

No such concern on the part of the trial court for the basic rights of Glasser is disclosed by the record before us. The possibility of the inconsistent interests of Glasser and . . . [the other defendant] was brought home to the court, but instead of jealously guarding Glasser's rights, the court may fairly be said to be responsible for creating a situation which resulted in the impairment of those rights. . . . " 315 U.S. at 70 - 71.

The Court concluded that trial counsel was placed in the difficult position of having to serve two masters. To determine the precise degree or quantity of prejudice sustained by Glasser, the Court stated, was "at once difficult and unnecessary" inasmuch as the right to counsel "is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." 315 U. S. at 76.

We observe that the appellee in the matter now before us, while literate, had completed five grades of school. If Glasser, a lawyer and presumably experienced prosecutor, could not be said by the Supreme Court to have waived his right to the effective assistance of counsel by his failure to object, we believe it indubitable that Hunt's similar failure does not constitute a waiver.

This Court in *Brown, supra,* speaking through Judge Thompson, set out at 220-21 three key questions, the use of

which will resolve most conflict of interest cases. The three cornerstone interrogatories are:

> "I. Is an actual or imminent conflict of interest present?
>
> II. Given an actual or imminent conflict of interest in existence,
>
>> a. What quantum of prejudice must exist before there is reversible error?
>>
>> b. Does that amount of prejudice exist in the present case?
>
> III. What responsibility, if any, is on the trial court to raise the conflict of interest *sua sponte*? "

Judge Thompson then discussed in detail each of the three critical questions, after stating that in this State:

> " . . . [A] conflict of interest begins with a consideration of the requirement that either an actual conflict of interest exists or that a conflict of interest be 'imminently potential', *Pressley v. State*, 220 Md. 558, 155 A.2d 494 [(1959)]. . . .*[T]he more complex a case becomes, either legally or factually, the more opportunity exists for a conflict of interest.* . . . " (Emphasis supplied).

One of the contentions made in the instant case is that Hunt's trial counsel also represented six other defendants, which severely impaired the effectiveness of his cross-examination. Hunt argues that his former attorney, by representing other defendants, was placed in the position of figuratively having to tread upon eggshells because his questions to adverse witnesses had to be so framed, in Hunt's view, as to avoid harm to the greatest number, and thus it was Hunt who suffered from counsel's timidity in cross-examining. *Brown, supra,* points out at 222 that, "the effectiveness of cross-examination is significantly diminished as a result of actual or imminent conflict of interest."

The Supreme Court, in *Glasser,* observed that inability of

counsel to cross-examine effectively amounted to an actual conflict of interest. Similar holdings are found in *United States v. Gougis*, 374 F. 2d 758 (7th Cir. 1967); *Craig v. United States*, 217 F. 2d 355 (6th Cir. 1954); *Application of Buffalo Chief*, 297 F. Supp. 687 (S.D.S.D. 1969); *People v. Fuller*, 268 Cal.App.2d 844, 74 Cal. Rptr. 488 (1969); *People v. Bopp*, 279 Ill. 184, 116 N. E. 679 (1917); *Com. ex rel. Whitling v. Russell*, 406 Pa. 45, 176 A. 2d 641 (1962); *Commonwealth v. Jones*, 215 Pa. Super. 41, 257 A. 2d 367 (1969).

In *Brown* we took a firm stand, "in line with both *Pressley* and *Glasser*" that with respect to prejudice to the party asserting the presence of a conflict that "the prejudice need only be slight before relief is granted." We noted that "[W]hile *Pressley* requires a showing of prejudice, *Glasser* is written in terms too specific to require more than slight prejudice." 10 Md. App. at 227.

> "Ineffective assistance [of counsel] has been found [to exist where] . . . codefendants . . . have disparate criminal records." J. Cook, *Constitutional Rights of the Accused: Trial Rights*, § 46 (1974).

*See, e.g., Case v. N.C.*, 315 F. 2d 743 (4th Cir. 1963); *United States ex rel. Michelotti v. Price*, 230 F. Supp. 505 (W.D. Pa. 1964); *People v. Douglas*, 61 Cal. 2d 430, 38 Cal. Rptr. 884, 392 P. 2d 964 (1964). *See generally*, Comment, *Criminal Codefendants and the Sixth Amendment: The Case for Separate Counsel*, 58 Geo. L. J. 369, 377 (1969), which states:

> " . . . [N]o discernible test for conflict is applied consistently and . . . each fact pattern is evaluated on a case-by-case basis."

The *ABA Standards Relating to the Administration of Justice, The Defense Functions*, § 3.5 (a) and (b) (1971) declares:

> "(a) At the earliest feasible opportunity defense counsel should disclose to the defendant any interest in or connection with the case or any other matter that might be relevant to the defendant's selection of a lawyer to represent him.

(b) Except for preliminary matters such as initial hearings or applications for bail, a lawyer or lawyers who are associated in practice should not undertake to defend more than one defendant in the same criminal case if the duty to one of the defendants may conflict with the duty to another. *The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several co-defendants except in unusual situations when, after careful investigation, it is clear that no conflict is likely to develop and when the several defendants give an informed consent to such multiple representation.* In some instances, as defined in the Code of Professional Responsibility, accepting or continuing employment by more than one defendant in the same criminal case will constitute unprofessional conduct." (Emphasis supplied).

Judge Evans, based upon the evidence adduced at the post conviction hearing, made certain findings of fact. He said:

"This court has undertaken an extensive review of the transcript and proceedings of this case to determine whether a conflict of interest existed and, if so, whether the petitioner was prejudiced by this conflict. This case involved allegations that the nine defendants, all members of the same motorcycle gang, kidnapped Miss Stec for a period of six days. The evidence indicated that the entire group was traveling together for the majority of this period. Each of the defendants would therefore have a reason to disassociate himself from the group and to try to place the blame on another co-defendant. [*See Glasser v. United States, supra.*] Hunt would have great difficulty in doing this because he was the leader of the group. Since his counsel was unable to do this, due to his representation of six other defendants, an actual

conflict of interest existed and the first requirement of *Brown* is satisfied.

In considering the second requirement of *Brown,* it is necessary to study the record to determine whether Hunt's counsel was as effective as he might have been had the conflict not existed. *A careful examination of the record shows that counsel was not as effective.* For example, Hunt wanted to take the witness stand in his own defense but was advised by counsel not to do so because counsel feared that Hunt's prior criminal record would prejudice the other defendants. [*See, Case v. N.C., supra; United States ex rel. Michelotti v. Price, supra; People v. Douglas, supra; J. Cook, Constitutional Rights of the Accused: Trial Rights* § 46 (1971)]

*Petitioner was also prejudiced by his counsel's closing argument in which he admitted that the petitioner was the focal point of the State's case and thereby drew the attention of the jury to Hunt.* In his argument to the jury, Hunt's counsel also did not have the opportunity to disassociate or minimize Hunt's actions from those of the other defendants due to his joint representation.

Hunt was represented by the same attorney in both the trial court and the Court of Special Appeals. This is the apparent reason this issue was not presented to the Court when it considered Hunt's appeal. . . . Hunt first realized there was a conflict of interest when he contacted other attorneys about the possibility of representing him in his quest for post-conviction relief. For these reasons, Hunt should not be foreclosed from raising the issue at this time." (Emphasis supplied).

Our perusal of the record convinces us that Judge Evans's findings on the facts are not clearly erroneous, Md. Rule 1086, and that his interpretation of, and ruling upon, the law is correct. The record discloses that the legal representation

afforded Hunt during the trial left much to be desired because trial counsel failed to perceive the conflict of interest that existed between Hunt and his co-defendants. No attack on the prosecuting witness's credibility could be effectively made by Hunt's lawyer, except at the expense of Hunt's six co-defendants, represented by the self-same lawyer. This is true because the prosecutrix's testimony centered on Hunt. If defense counsel through cross-examination pointed out, directly or indirectly, to the witness the omission from her narrative of the culpability of the other defendants, he might have jogged her memory and caused her to relate some facts indicative of guilt on the part of the other six defendants. Counsel thus was placed in a "damned if he did and damned if he didn't" posture. Hunt's prior criminal record for two robbery convictions might have influenced the jury against Hunt's cohorts. Trial counsel was placed in the position of deciding whether to risk the possibility of an unfavorable inference being drawn by the jury against the six co-defendants, because of Hunt's criminal record, or keeping Hunt off the witness stand. Had Hunt testified, as he desired to do, there is the possibility that the jury may have believed his version of the facts, *viz.*, that the prosecutrix was a willing, consenting partner in the six-day escapade and not the victim. It may well be that the jury would have still believed the prosecutrix, but we are unable to determine with any degree of certainty that such is the case.

We think Judge Evans properly granted Hunt's application for post conviction relief and ordered a new trial.

In light of our holding we do not reach a discussion of the third interrogatory, *i.e.*, the duty, if any, of the trial court to have acted *sua sponte* in this case.

*Order affirmed.*