# EMORY EDWARD REED v. STATE OF MARYLAND

[No. 1214, September Term, 1981.]

*Decided September 3, 1982.*

The cause was argued before GILBERT, C. J., and MOORE and WILNER, JJ.

*Clarence W. Sharp, Assigned Public Defender,* for appellant.

*Stephen B. Caplis, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Paul S.*

*Podolak, State's Attorney for Cecil County,* and *John L. Scarborough, Assistant State's Attorney for Cecil County,* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

This appeal stems from the conviction of appellant, Emory Edward Reed, on six of the fifteen counts with which he was charged as a result of his participation in a series of criminal events occurring on September 4, 1980. Appellant was tried jointly with Arnold Murray Moore, who also participated in the escapade and was similarly convicted. Both defendants were represented by the same attorney at trial. However, only Moore was present throughout the trial. Reed failed to return to the courtroom following a recess on the first day of trial and the proceedings continued in his absence. On appeal he contends:

1. That his rights to a fair trial and due process were violated when the trial proceeded in his absence.
2. That he was denied effective assistance of counsel and due process by virtue of a conflict of interest arising from the joint representation of appellant and Moore by the same attorney.
3. That the trial court erred in permitting the consolidation of appellant's case with Moore's for purposes of trial.
4. That the evidence was insufficient to support appellant's convictions; and
5. That he was denied his right to a speedy trial.

We conclude that appellant's contentions regarding trial counsel's alleged conflict of interest are best left for resolution through other available procedures such as post conviction relief under Md. Ann. Code Art. 27 § 645A *et seq.,* (1957, 1982 Repl. Vol.). We also find that appellant's remaining contentions lack sufficient merit to warrant reversal of his convictions. We shall therefore affirm.

## I

The evidence at trial showed that in the early evening hours of September 4, 1980, appellant Reed and his codefendant, Moore, along with three other males and a female, Debbie Coates, traveled by car from New Castle, Delaware, to the home of one Noah R. Johnson, Jr., in Elk Mills, Maryland. Johnson had attended a party with Debbie Coates four days earlier at a trailer park in Chesapeake City, Maryland, and while at the party she had lost some items of jewelry during an altercation with another female, Kathy Bruner. Coates had prevailed upon Reed, Moore and the other males to assist her in recovering the jewelry but they needed Johnson's assistance to lead them to the Bruner trailer because Coates could not recall its location.

The group from New Castle arrived at Johnson's residence shortly after he had returned home from work. According to the testimony, appellant left the car in which the group had been traveling and entered the front door of Johnson's residence. After determining Johnson's identity, appellant walked to where Johnson was napping on the floor, grabbed Johnson by the hand and yanked him up and out the door. Appellant then grabbed Johnson by the hair, herded him down the porch steps into the waiting car, and demanded that Johnson take the group to the Bruner trailer.

Johnson testified that as he was being forced into the vehicle, he was struck by appellant on the side of the head with an implement described as a twisted cane. He also stated that during the journey to the trailer he was taunted and punched repeatedly, and that at one point he was threatened by an automatic pistol first brandished by Reed and then subsequently passed around to other occupants of the car until it came into the possession of the driver, Moore.

Johnson directed his abductors to the Bruner trailer and upon their arrival, Reed, Moore, and another male departed from the car and entered the trailer. There they found a babysitter and Bruner's three children. Bruner and her roommate, Steve Losten, were not there. Reed, Moore and the other male began to search the trailer for the missing

jewelry. Johnson and the others subsequently were brought into the trailer to aid in the search. Johnson testified that he found one piece of the jewelry on the floor where the two girls had fought.

During the search a car bearing Bruner and Losten pulled up out front. Reed left the trailer and returned, pulling Losten with him by the hair. Reed asked Losten about the jewelry and about Losten's role, if any, in the fight between Bruner and Coates. The testimony indicates that Reed then struck Losten in the face with the twisted cane. Shortly thereafter, all of the visitors, with the exception of Johnson, began beating Losten with their fists, and with clubs, and other implements. They then left the trailer, after removing Losten's .22 caliber rifle from a gun rack on the bedroom wall.

Once outside, the group witnessed the approach of a van containing four friends of Noah Johnson. The van pulled up in front of the Bruner trailer, and following a verbal exchange between its occupants and those of the car, the car sped off with Reed, Moore, Coates, Johnson and the other three males inside. The van with its original four occupants plus Losten, followed in pursuit until the car pulled into the parking area of a liquor store. As the van approached the car, one of the occupants of the car opened fire on the van with the automatic pistol. The evidence indicates that three or four shots were fired from the passenger's side of the front seat of the car where Moore was situated. The evidence further showed that at least two of the shots struck the passenger side of the van, but that none of the van's passengers was hit.

The car then drove away from the liquor store, and the van again pursued. After traveling several miles, the car turned, proceeded down a dirt road and stopped. Moore exited the car with the pistol, and Reed with the rifle that had been taken from the trailer. The car continued down the dirt road while Reed and Moore took up positions in the woods. As the van approached, they opened fire. The van reversed direction and proceeded to a nearby house. The police were summoned. Moore and Reed rejoined their cohorts in the car, and

proceeded down the dirt road in search of an alternate route of escape. Finding no way out, they attempted to turn the vehicle around. It was at this point that the police arrived and apprehended them.

Reed and Moore were each arraigned on a fifteen count indictment for their participation in the day's events. Both were represented by the same attorney. Although their cases were originally scheduled for trials on separate days, they were consolidated upon the State's motion. Appellant's counsel consented to the consolidation.

The cases went to trial in the Circuit Court for Cecil County (Mackey, J.). Following extensive *voir dire,* a panel of prospective jurors and alternates was chosen. Before swearing the jury, however, the court recessed for lunch, instructing all to return to the courtroom at five minutes of one. Appellant failed to return to the courtroom as instructed, and after police broadcasts for him were issued, and efforts were made to locate him at his home and at a local hospital, the trial judge, on the record and out of the jury's presence, concluded that appellant had voluntarily absented himself from the trial. Relying on the authority of Md. Rule 724, the court decided to continue with the proceedings in appellant's absence.

Appellant's trial counsel then noted on the record the "untenable position" in which he had been placed by virtue of appellant's absence. He sought to have the jury instructed upon its return that its members should draw no detrimental inference against Mr. Moore from appellant's absence. He also requested that his appearance on behalf of appellant be stricken and, in the alternative, that the case against appellant be continued. Both motions were denied, but the trial judge agreed to give the requested instruction.

The jury was returned to the courtroom and sworn. The court then gave an instruction concerning appellant's absence. The trial lasted approximately three days. The jury convicted each defendant of kidnapping, use of a handgun in the commission of a crime of violence, carrying concealed deadly weapons, carrying a dangerous and deadly weapon

openly with the intent to injure, theft, assault and battery, and three counts of assault with intent to murder.

Appellant was sentenced to a total of twenty-five years in prison, and five years' probation following his release from prison. He then noted this appeal.

## II

### i

It is a fundamental principle that the accused in a criminal case has the right to be present at every stage of his trial. That right emanates from the common law, *Tisdale v. State,* 41 Md. App. 149, 396 A.2d 289 (1979), but is both protected and preserved by relevant provisions of the Federal and State Constitutions. The right of a criminal defendant to be confronted with the witnesses against him is guaranteed by both Article 21 of the Maryland Declaration of Rights and by the Sixth Amendment to the Federal Constitution made applicable to the states through the Fourteenth Amendment. *von Lusch v. State,* 31 Md. App. 271, 356 A.2d 277 (1976), *rev'd on other grounds,* 279 Md. 255, 368 A.2d 468 (1977).

In Maryland the principle is stated with particularity in Md. Rule 724. Subsection (a) of the rule provides that:

> "The defendant shall be present at every stage of the trial, including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as provided by these rules."

Subsection (c) of Rule 724 addresses situations in which the accused is deemed to have waived his right to be present. Paragraph one of that subsection states that a defendant waives his right when:

> "He voluntarily absents himself *after the trial has commenced,* whether or not he has been informed by the court of his right to remain during the trial." (Emphasis added.)

Thus, while the right to be present under Rule 724 (a) attaches during any "stage of the trial, including the impaneling of the jury", the ability to waive that right pursuant to subsection (c) (1) does not accrue until "after the trial has commenced." The rule does not specify any point in a criminal proceeding at which the trial will be deemed to have "commenced."

Appellant posits that because the jury was not sworn when he absented himself, the trial had not yet "commenced" for purposes of waiver of his right to be present under Rule 724 (c) (1), and that, therefore, the trial court erred by concluding that he had waived his right to be present and by proceeding in his absence. We disagree.

While the swearing of a jury is the point at which jeopardy attaches, *Blondes v. State,* 273 Md. 435, 330 A.2d 169 (1975), it does not necessarily follow that this is the point at which trial commences for purposes of waiver under Md. Rule 724 (c) (1). Indeed, when subsection (c) of the rule is read in light of subsection (a) which specifies when presence is required, it appears that the rule presupposes commencement of the trial at an earlier point in the proceedings than when the jury is sworn. The language of subsection (a) implies that the impaneling of the jury, which of course takes place before the jury is sworn, is a "stage of the trial," at which the accused has a right to be present. *See also Hughes v. State,* 288 Md. 216, 421 A.2d 69 (1980). The rule's inclusion of the jury impaneling process as a "stage of the trial," clearly indicates that the trial itself is deemed for purposes of Rule 724 to have commenced at or before the beginning of that process. Therefore, the voluntary absence of the accused during the process constitutes absence "after the trial has commenced" for purposes of Md. Rule 724, and constitutes a waiver under paragraph one of subsection (c) of that rule.

This interpretation of Md. Rule 724 is fortified by case law interpreting Rule 43 of the Federal Rules of Criminal Procedure, the federal counterpart to the Maryland Rule. *Haley v. State,* 40 Md. App. 349, 392 A.2d 551, *cert. denied,* 284 Md. 744 (1978). In the case of *United States v. Miller,* 463 F.2d 600 (1st Cir.), *cert. denied, sub nom, Gregory v. United*

*States,* 409 U.S. 956 (1972), a case in which the Court addressed the issue of waiver of the right to be present where the defendant had absented himself after *voir dire* but before the jury was sworn, the court stated that:

"... the trial commences 'at least' from the time that the work of impaneling jurors begins. . . . The concept that a defendant could go through trial proceedings to the point of selecting the entire jury and then, perhaps because he was dissatisfied with the complement thereof, freely depart, does not appeal to us. To draw a bright line at the formality of swearing the jury would frustrate the purpose of Rule 43." *Id.* at 603 (Citations omitted.)

In the case at bar, the appellant's absence occurred after the trial had commenced, for purposes of Md. Rule 724 (c) (1). The trial court, after making reasonable efforts to ascertain his whereabouts, determined that appellant's absence was voluntary, and decided to proceed in his absence. We believe that the trial court acted in accordance with its authority under Md. Rule 724.

ii

Appellant's next contention is that he was denied effective assistance of counsel and due process of law by virtue of a conflict of interest on the part of his trial counsel which arose from counsel's attempt to represent appellant and codefendant Moore jointly at trial.

The Court of Appeals and this Court ordinarily have declined to address the issue of ineffective assistance of counsel on direct appeal unless the issue is propitiously raised and decided below. *Wilson v. State,* 261 Md. 551, 571-2, 276 A.2d 214, 224 (1971); *Boswell v. State,* 5 Md. App. 571, 583, 249 A.2d 490, 499 (1968), *cert. denied,* 253 Md. 733 (1969). Otherwise trial counsel, whose professional ability and integrity may be impugned thereby, would be afforded no opportunity to be heard. *Harris v. State,* 2 Md. App. 408, 409, 234 A.2d 781, 782 (1967).

While it may be argued on the facts of the instant case that the issue of trial counsel's conflict of interest was indeed raised and decided in the trial court in connection with the motions to strike counsel's appearance on behalf of appellant and to continue appellant's case, we do not believe that the issue was sufficiently ventilated at that time to permit informed decision on direct appeal.

An examination of the record reveals that in arguing these two motions, defense counsel never indicated that his "untenable position" was attributable to anything but appellant's absence. Appellant's trial counsel first raised the question of his ability to represent both defendants effectively when he discovered appellant's failure to return to the courtroom on the first day of trial. Moreover, he consented to the State's motion to consolidate the two cases several weeks prior to trial. These facts strongly suggest that it was the potentially detrimental impact of appellant's absence on the trial strategy of his attorney which sparked the motion to strike counsel's appearance and the motion for a continuance.

In our view, the conflict of interest, if any, would derive not so much from appellant's absence from trial and the difficulties in representation that might have arisen therefrom, as from the imminent potential for reciprocal recrimination or antagonistic defenses which arguably existed in recognizable form long before the case ever came to trial.[1] However, because the conflict of interest issue was not examined in this light below, we do not believe that it would be appropriate to address it on direct appeal.

The record before us has not been sufficiently developed with respect to such issues as whether trial counsel

---

[1] One indication of a possible conflict of interest in joint representation of Reed and Moore existed as early as five months before trial. At that time the State propounded answers to a motion for discovery and inspection filed on behalf of Reed. Included among the list of possible State's witnesses was the name of Reed's codefendant, Moore, indicating that at least under the State's theory of the case, Moore possessed information that if revealed at trial, could inculpate Reed with respect to the crimes charged. While this fact alone probably would not warrant prohibition of co-representation in the case, it should have prompted further inquiry into the possible existence of antagonistic defenses.

perceived a potential conflict of interest when he consented to consolidation of appellant's case with Moore's; whether appellant was adequately informed regarding any potential conflict, and, if so, whether he voluntarily agreed to joint representation; whether trial counsel's strategy and ability to cross-examine were actually impaired; and, if so, whether they were impaired merely because of appellant's absence or because of the existence of a formerly unrecognized conflict of interest. Until such matters are explored more thoroughly we are unable to conduct a full and fair assessment of the issue. We therefore conclude that appellant's contention regarding ineffective assistance of counsel is not properly before us at this time.[2]

iii

Appellant's next contention is that the trial court erred in permitting the consolidation of his case with Moore's. While this issue seems integrally related to appellant's contention regarding conflict of interest, separate and independent grounds exist for not addressing it at this time. Appellant's trial counsel consented to consolidation below, and filed no

2. We note in passing that in view of the principles set forth and discussed in cases such as *State v. Hunt,* 26 Md. App. 417, 338 A.2d 95, *cert. denied,* 276 Md. 745, 751 (1975), and *Brown v. State,* 10 Md. App. 215, 269 A.2d 96 (1970), there appears to be some merit in appellant's contention regarding the existence of a prejudicial conflict of interest. Those cases reveal that, although mere joint representation of two or more defendants does not in and of itself create a conflict of interest which deprives one of effective assistance of counsel, the existence of an actual conflict of interest or the imminent potential for a conflict of interest stemming from joint representation, which results in even the slightest prejudice to the accused and renders his attorney not as effective as he otherwise might be, does constitute an infringement of the accused's right to effective assistance of counsel. *Hunt, supra* at 421-23, 338 A.2d at 98-9; *Brown, supra* at 219-30, 269 A.2d at 100-04.

In the case at bar, we note the presence of several of the signposts which the *Hunt* and *Brown* cases suggest indicate a need for further inquiry to determine if an actual or imminently potential conflict of interest existed. First, appellant's trial counsel admitted, in the course of his motions following the discovery of appellant's absence, that his trial strategy, along with his ability to effectively cross-examine witnesses, might be impaired by the "untenable" position in which he found himself. Second, appellant's codefendant took the stand in his own defense and in the course of trying to mitigate his own role in the day's events, directly implicated appellant in the crime charged.

timely motion to sever the trials pursuant to Md. Rule 736 (a). The issue is therefore deemed to be waived for purposes of this direct appeal.

iv

Appellant's next contention is that the evidence presented was not sufficient to support his convictions. He contests his conviction for assault with intent to murder Steven Losten (count 7) on grounds that Losten's injuries, evidenced by cuts and bruises on his face, and by welts on his back in the shape of the twisted cane that was in appellant's possession, were not sufficient to create an inference of specific intent to murder. This contention is without merit. Proof of specific intent to murder is not necessary to sustain a conviction for assault with intent to murder under Md. Ann. Code Art. 27 § 12 (1957, 1982 Repl. Vol.). All that need be shown is a specific intention to commit grievous bodily harm, *James v. State,* 31 Md. App. 666, 674, 358 A.2d 595, 600, *cert. denied,* 278 Md. 725 (1976), and the evidence presented was sufficient to support such a finding.

Appellant challenges his conviction for use of a handgun in the commission of a crime of violence (count 3) and for wearing, carrying or transporting a handgun (count 4), alleging that the evidence did not establish that he used or possessed the automatic pistol. We believe the evidence was sufficient for the jury to conclude that appellant's codefendant, Moore, used the pistol to fire upon the occupants of the van during the confrontation at the liquor store. The evidence also was sufficient to permit a finding that appellant played an important role in the events leading up to that assault, and that appellant aided Moore in setting up an ambush of the pursuing van subsequent to the liquor store confrontation. Thus, there was sufficient evidence for the jury to conclude that appellant was an accomplice to the assaults with intent to murder perpetrated on the van occupants by Moore. As such, he is criminally liable for Moore's use of the handgun just as if he had used it himself. *Broadway v. State,* 23 Md. App. 68, 326 A.2d 212 (1974), *cert. denied,* 273 Md. 719 (1975).

With reference to appellant's contention regarding the charge of wearing, carrying or transporting a handgun (count 4), we note that the jury returned no verdict on this count in accordance with trial court instructions to bypass consideration of it in the event of a guilty verdict on the count charging use of a handgun in the commission of a crime of violence. Thus, there is no conviction on count 4 for us to consider.

Appellant also contests his convictions for assault with intent to murder two of the occupants of the van, claiming that there was insufficient evidence that appellant ever used or possessed the handgun which was the instrumentality employed in the assaults. As discussed above, the evidence was sufficient to permit the jury to conclude that defendant Moore actually perpetrated the assaults and that appellant was Moore's accomplice. Convictions on these counts are, therefore, not improper.

V

Appellant also asserts that he was denied his right to a speedy trial. He was tried within seven months of his arrest, 161 days after his indictment and 133 days after the appearance of his trial counsel was entered in the case. There appears to have been no delay which could be considered either undue or attributable to the prosecutor or the court. Appellant never asserted his right to a speedy trial prior to this appeal. He was free on bond pending trial, and his contentions regarding loss of employment, hardship and anxiety as a result of the alleged delay were never made a part of the record below. We are thus unable to conclude that his speedy trial right has been violated. *Barker v. Wingo,* 407 U.S. 514 (1972).

Because we believe that more appropriate channels are available to appellant for resolution of the issue he raises concerning ineffective assistance of counsel, and because we are unpersuaded by the other contentions he advances, we shall affirm his convictions by the trial court.

*Judgments affirmed; appellant to pay the costs.*