JAMES MORRIS KENT, a/k/a Maurice James Kent *v.* STATE OF MARYLAND

[No. 104, September Term, 1970.]

*Decided February 18, 1971.*

---

The cause was argued before MURPHY, C.J., and MORTON and MOYLAN, JJ.

*Bruce R. Harrison* for appellant.

*James L. Bundy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Thomas A. Rymer, State's Attorney for Calvert County,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

The appellant was convicted in a non-jury trial in the Circuit Court for Calvert County of attempted robbery with a deadly weapon and carrying a concealed weapon. Concurrent sentences of ten years and three years imprisonment, respectively, were imposed.

In this appeal it is first contended that appellant was denied his constitutional right to the effective assistance of counsel. It appears that appellant's codefendant, Thomas Mackall, had been tried and convicted for the crimes charged to appellant but at the time of apellant's trial, Mackall had not been sentenced. When Mackall was called as a State's witness in appellant's trial, counsel for appellant, who was also counsel for Mackall, unsuccessfully sought to prevent Mackall from testifying by advis-

ing him in open court that he could refuse to testify on the ground of self-incrimination. Mackall, nevertheless, elected to testify. It is argued that this created a conflict of interest for appellant's trial counsel since he could not effectively represent appellant at this point and at the same time adequately discharge his obligation to protect the interests of the codefendant, Mackall.

In order to support a finding that a criminal defendant has been denied effective assistance of counsel because of a conflict of interest, the record must disclose that either an actual conflict of interest existed or that a conflict of interest was "imminently potential." *Pressley v. State,* 220 Md. 558. Given such a situation where an actual or imminent conflict of interest is shown to exist, there must be a further showing that some prejudice to the accused resulted, although such prejudice need only be slight and the requirement is satisfied if it is demonstrated "that counsel was not as effective as he might have been had the conflict not existed." *Brown v. State,* 10 Md. App. 215, 227.

In the case at bar, Mrs. Priscilla Seidel testified that on the evening of March 20, 1968, she and her husband were sitting in their living room when the back door of their home opened and she saw a "man standing there with a sawed-off double-barreled shotgun." Her husband then "got up and came over and said, I will give you the money and before he could make a move, the man shot." The main part of the shotgun blast hit the base of a lamp in front of Mrs. Seidel but the remaining part hit her face and shoulder. She stated that the assailant then ran from the house without taking any money. Mrs. Seidel further testified that her assailant was not present in the courtroom and that she did not at any time see appellant in or around her home that evening.

Deputy Sheriff Oscar Lusby, Jr., testified that on the evening in question, he set up a roadblock on the "only State Route" to or from the Seidel home as part of the investigation of the crime. According to the deputy, at approximately 10 p.m., a 1962 Mercury occupied by

Thomas Mackall, but registered in appellant's name, stopped at the roadblock. The appellant was not in the car, however, and the deputy testified that he did not see apellant at any time that night.

Trooper First Class Roland H. Hayman testified that as a result of a statement made by Thomas Mackall after he was "picked up" in connection with the incident at the Seidel home, appellant was arrested on April 3, 1968, and taken to the State Police barracks where he made a statement concerning his knowledge of the incident. After objection by trial counsel for appellant, evidence was presented on the voluntariness of the statement. Based on the evidence before him, the trial judge overruled appellant's objection and the written statement was introduced into evidence.

Russell M. Wilhelm, whose expertise in the field of firearms identification was uncontested, testified that he examined 25 shotgun pellets and a shotgun wad found at the scene of the crime to determine if they were fired from the sawed off shotgun appellant claimed that Mackall used in the attempted robbery. From his examination, the "wad could have very well come from that particular shotgun inasmuch as both the wad and the shotgun were 12-guage" but the witness testified that he had "no way of determining that this shot is particularly related to this gun."

Thomas Mackall, who had previously been convicted of perpetrating the crime at the Seidel home but who had not, as yet, been sentenced for that crime, testified as a State's witness against appellant. Before Mackall testified, however, he was advised, but did not avail himself, of his constitutional right against self-incrimination by appellant's trial counsel, who had also represented Mackall at the earlier trial. Mackall testified that he and appellant discussed robbing the Seidels two days prior to the crime; that it was appellant's idea to commit the crime; that appellant told Mackall that the bag Mr. Seidel carried home from work contained money; and that for going into the house with appellant's shotgun

and robbing the Seidels, Mackall was to get half of the money. Moreover, Mackall stated that because the area around the Seidel home was patrolled by a private watchman, appellant dropped him off about one hundred yards from the house, left in the car and then returned later to pick him up "about twenty feet" from the house.

Appellant testified that on the day of the crime he and Mackall had worked on appellant's house trailer and that after dinner Mackall asked him if he would "run him down between the Ranch Club and Drum Point." According to appellant: "Well beings he was helping me on the trailer that day, I just ran him on down there. He told me to pick him up in about an hours time and which I did and came back and watched television." Appellant denied knowing anything about the robbery plan until Mackall told him what he had done when appellant picked him up an hour later. Appellant did state, however, that after Mackall took some old clothes from under the front seat and left the car, he checked under the seat and discovered that a shotgun that he had placed there a week and a half earlier was missing. Moreover, appellant stated that he had let Mackall out of the car on a main road "a quarter of a mile" from the Seidel home and that after picking Mackall up an hour later, they drove to appellant's home and Mackall left on foot. With respect to his car being stopped at the roadblock, appellant stated that later that evening his brother borrowed the car to drive a friend home "so I guess Mackall asked my brother beings he was going up the road could he take him home, so I guess that that is what happened."

Appellant's wife testified that on the night of the crime appellant and Mackall left the house about 7:30; that appellant returned home in "about one hour" and watched television for "about forty-five minutes or a little longer" before going out again; and that when appellant again entered the house, Mackall was not with him.

It is in this factual posture that we must determine whether appellant has been denied his Sixth Amendment right to effective assistance of counsel because of the con-

flict of interest facing his trial counsel as a result of representing both appellant and the codefendant, Mackall.

## I.

In *Brown, supra,* at 221, Judge Thompson, speaking for this Court, set out general guidelines to determine whether an actual or imminent conflict of interest exists:

> "* * * Within the facts of an individual case, it is proper to consider the complexity of both the law and the facts since the more complex a case becomes, either legally or factually, the more opportunity exists for a conflict of interest. Conversely, if the law is simple and the evidence of guilt strong, the opportunity for conflict of interest may be lessened. *Pressley v. State, supra.* Of course, the contention may still be found to be an unsupported allegation, *Pressley v. State, supra,* or to have been waived at trial, *Plater v. Warden,* 211 Md. 629, 126 A. 2d 574."

While it is true that the facts of each particular case must be examined to determine whether an actual or imminent conflict of interest exists, certain factual situations contain ingredients which inherently tend to create conflict of interest problems. These situations were explored and analyzed in *Brown* and, as there stated, "[o]f special relevance to our consideration in this case are those cases in which one attorney was simultaneously representing the defendant and a prosecution witness against the defendant, who was usually under indictment or awaiting sentence. See *State v. Ebinger,* 97 N.J.Super. 23, 234 A. 2d 233 (N.J.Super. Ct. 1967), *People v. Ware,* 39 Ill. 2d 66, 233 N.E.2d 421 (Ill.S.Ct. 1968), *United States ex rel. Williamson v. LaVallee,* 282 F. Supp. 968 (U.S.D.C., N. Y. 1968) and *United States ex rel. Platts v. Myers,* 253 F. Supp. 23 (U.S.D.C., Pa. 1966)." In the cited cases, "relief was granted since it was a harmful

conflict of interest for one attorney to represent both a defendant and the witness who testified against him."

Here appellant was represented below by an attorney who simultaneously represented an individual who could be categorized, in this instance, as a prosecuting witness. There can be no doubt that appellant's counsel was still actively representing Mackall for the record discloses that counsel felt obligated to inform him that he had a right not to further incriminate himself by testifying in appellant's trial. At the same time, however, counsel owed an unfettered duty to appellant to cross-examine Mackall in an all out effort to destroy his credibility and to demonstrate, if possible, that his testimony implicating appellant as an active participant in the crime was a complete fabrication. If successful, this might well result in adversely affecting the length of Mackall's sentence and subjecting Mackall to a prosecution for perjury. Thus, counsel was placed in the untenable position where a vigorous and successful cross-examination, redounding to the great benefit of appellant, would result in gross damage to Mackall, his other client. Cf. *Davenport v. State,* 7 Md. App. 89, 97. Thus, it is clear that counsel's conflict of interest was not merely "imminently potential" but was an actuality. See *United States ex rel. Platts v. Myers,* 253 F. Supp. 23 (U.S.D.C., Pa. 1966).

## II.

As has been indicated, however, more than a mere demonstration of the existence of a conflict of interest is required before relief to an accused will be granted. Prejudice to the accused, although slight, must additionally be shown before such a conflict of interest will be deemed harmful error. Thus, should the record show that counsel, in a situation such as the one at bar, had abandoned his duty toward the client who was testifying and, on behalf of the client on trial, had pressed his cross-examination with all means available in an effort to impeach the witness's credibility, it may have demonstrated that his representation was not significantly impaired by the con-

flict of interest. Under such circumstances, the conflict conceivably would not have been harmful error as to the accused.

The record before us, however, falls short of demonstrating such a result. The only evidence, aside from Mackall's testimony, connecting appellant with the crime was his own statement to the police and his testimony in court. An examination of the statement and testimony discloses that appellant admitted driving Mackall to a point one quarter of a mile from the scene of the crime and admitted possessing the gun supposedly used in the crime but denied knowing that Mackall was going to commit the crime. Although appellant admitted facts which apparently could make him an accessory after the fact to the attempted robbery, the evidence, taken as a whole, without Mackall's testimony, was not conclusive that he was a principal participant in the attempted armed robbery.

Thus, Mackall's testimony was an important and compelling segment in the State's case against appellant. Any impairment of counsel's effective cross-examination of Mackall, as a result of his conflict of interest, would more likely result in prejudice than if the State's case, without Mackall's testimony, had been a very strong one. As the Supreme Court stated in *Glasser v. United States*, 315 U. S. 60, 67:

> "Admittedly the case against Glasser is not a strong one . . . This is significant in relation to Glasser's contention that he was deprived of the assistance of counsel contrary to the Sixth Amendment. In all cases the constitutional safeguards are to be jealously preserved for the benefit of the accused, but especially is this true where the scales of justice may be delicately poised between guilt and innocence. Then error, which under some circumstances would not be ground for reversal, cannot be brushed aside as immaterial since there is a real chance that it

> might have provided the slight impetus which swung the scales toward guilt."

An examination of counsel's cross-examination of Mackall in the record leads us to the conclusion that because of the conflict of interest the effectiveness of the cross-examination was significantly impaired. Although a very real possibility existed that Mackall was testifying because of an expectation on his part that he would be accorded a lighter sentence by testifying against his codefendant, counsel never questioned him with respect to this possibility. Nor did he question Mackall concerning any possible criminal record he might have. In fact, the record discloses that counsel's cross-examination could be classified as perfunctory for he asked very few of the questions that were available to him in an effort to impeach Mackall's testimony, questions which he may well have asked had Mackall not been his client. We find, under the circumstances here, that counsel's cross-examination of Mackall was significantly impaired by the conflict of interest he was faced with and that this impairment was clearly prejudicial to the appellant.

## III.

Neither the appellant, *pro se,* nor his trial counsel specifically raised the conflict of interest issue at trial. The issue, however, should have been apparent to the presiding judge. See *Brown v. State, supra,* at 230. He knew that appellant's counsel had represented Mackall at his previous trial; that Mackall had not then been sentenced; and that appellant's counsel sought to prevent Mackall's testimony in appellant's trial on the ground of self-incrimination. Counsel was in an obvious conflict of interest situation. Since waiver will not be presumed from a silent record, *Moore a/k/a Smith v. State,* 7 Md. App. 330, 334, the trial judge should have ascertained for the record whether appellant, knowingly and willingly, was consenting to the dual representation at a time when he would have been entitled to separate counsel. *People v.*

*Ware,* 233 N.E.2d 421. Anything less was a denial of appellant's right to the effective assistance of counsel. In view of our conclusion, we do not reach the other issues raised by appellant.

> *Judgments reversed; case remanded for new trial.*