THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KEITH DELL, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CLIFF SEGER, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRED SIMS, Appellant.

Fourth Department, December 9, 1977

## APPEARANCES OF COUNSEL

*Joseph B. Mistrett* for Keith Dell, appellant.

*Michael Violante* for Cliff Seger, appellant.

*Gold & Gold (Michael Gold* of counsel), for Fred Sims, appellant.

*Aldo L. Di Florio, District Attorney (Betsy Hurley* of counsel), for respondent.

### OPINION OF THE COURT

HANCOCK, JR., J.

On this appeal defendants contend, *inter alia,* that they were deprived of their constitutional rights to effective assistance of counsel and a fair trial because of conflicts of interests resulting from their attorney's efforts to represent them jointly.

Defendants, Keith Dell, age 18, Cliff Seger, age 24, and Fred Sims, age 20, were convicted by a jury of rape in the first degree (Penal Law, § 130.35) for having engaged in forcible sexual intercourse with complainant, age 18. The rape allegedly occurred on the evening of June 30, 1976 at the residence of defendant Sims. Complainant testified that she was taken to a downstairs bedroom in the Sims home where she was raped by Sims. Thereafter, she stated, when Sims went upstairs, the two other defendants, in succession, came downstairs and had forcible sexual intercourse with her against her will. Apparently, only defendant Dell showed any compassion for complainant, and heeded her pleas to stop.

During the trial, which commenced in Niagara County Court on January 17, 1977, all three defendants were represented by the same attorney, Benjamin Gold, Esq. Only one of the defendants, Keith Dell, testified. At first, in his testimony, he stated that he had had sexual relations with the complainant approximately six months prior to June 30, 1976. Later, on cross-examination, when asked if this had occurred during the winter, he stated that it happened "somewhere around Summer, I couldn't tell you." He also stated on direct examination that he was at Fred Sims' residence on the night of June 30; that defendants Sims and Seger were also there, and were smoking marijuana together; and that he saw Sims come up from downstairs, get Seger, and saw Seger go downstairs. Dell's admission that the incident of sexual intercourse involving complainant had occurred in the summer, and not the winter, was unanticipated, and apparently came as a surprise

to his attorney. Also, the damaging admission that he and his codefendants had been at the place where the alleged rape occurred, at the approximate time that the crime is alleged to have happened, was unexpected. In his summation, Attorney Gold was forced to attack his own client's testimony by claiming that Dell was confused and that "you can't go on smoking pot every day and have a mind that isn't too foggy."

Prior to the commencement of the trial and during a colloquy between the court and the Assistant District Attorney, the defendant Dell, Dell's father and attorney Gold concerning a plea bargain, the court inquired about the apparent conflict of interests arising from Mr. Gold's joint representation of the three defendants and the possibility of resultant prejudice to Keith Dell. At that time, the Assistant District Attorney made a formal offer, on the record, of a plea to a reduced charge of rape in the second degree, a class D felony, with a recommendation to the court of youthful offender treatment. The offer was contingent upon Dell's agreeing to testify against the other two defendants. Inasmuch as neither the prosecuting attorney nor the court would make any commitment concerning incarceration, Dell, on the advice of his attorney, Mr. Gold, refused the offer. After this refusal, the court observed in the presence of the defendant, his father and attorney Gold that "there could be an apparent conflict of interests between the defendants"; that "there has to be an inquiry * * * to determine whether or not [the] rejections of offers of pleas are made knowingly and intelligently by the people who are rejecting them", and that it could be "detrimental to the other two defendants if he, [Dell], testifed." When the defendant Dell commented "I don't understand", the court asked "are you making the decision as to rejecting what they have offered you based on your own interest or the interests of Seger and Sims?" The question was never answered by the defendant or his father. Instead, Mr. Gold's statement that he "didn't think there was any conflict at all" was apparently accepted as a satisfactory answer by the court. At no point in the transcript does it appear that the court inquired of the defendant whether he understood that a conflict of interests might exist which could be injurious to him. Nor did attorney Gold advise the court that he had discussed the possible conflict with the defendant.

It appears that the court never talked with defendants Sims

and Seger about the conflict of interests prior to the trial or at any time before February 24, 1977, the date of the hearing, in connection with attorney Gold's application for a new trial on the ground of newly discovered evidence. Before proceeding with the motion, the court directed each of the defendants to review the matter with his parents, and "to determine if there is any possible conflict between Keith Dell and Cliff Seger and Fred Sims before we take testimony and open this hearing and whether or not you all wish to be represented by the same counsel". A recess was taken after which the defendants and their respective fathers all declared that they wished to proceed with attorney Gold. It should be noted that the court's inquiry was directed only toward the possibility of the conflict resulting from Mr. Gold's representation of all three defendants on the motion for a new trial and in future matters. No question was asked or statement made concerning the possibility of there having been a conflict of interests arising from attorney Gold's past representation of all defendants during the trial.

In *People v Gomberg* (38 NY2d 307, 312) the Court of Appeals, recognizing that the constitutionally guaranteed right of an accused to the effective assistance of counsel may be substantially impaired if one lawyer simultaneously represents the conflicting interests of a number of defendants *(Glasser v United States,* 315 US 60, 70; US Const, 6th Amdt; NY Const, art I, § 6; CPL 210.15, subd 2), stated: "the joint representation of defendants is not per se a denial of the effective assistance of counsel. *(People v Gonzalez,* 30 NY2d 28, 34, cert den 409 US 859.) A conflict exists only when the individual defenses 'run afoul of each other.' *(People v Gonzalez, supra,* p 34.) Yet, once a conflict is clearly established, the courts will not enter into 'nice calculations' as to the amount of prejudice resulting from the conflict. *(Glasser v United States, supra,* p 76.)"

Joint representation of codefendants may be permissible where there has been a knowing and intelligent waiver *(People v Gomberg, supra,* pp 313, 314), or where no prejudice is shown, as in *United States v Alberti* (470 F2d 878, 881, cert den 411 US 919; see, also, *United States v De Berry,* 487 F2d 448, 452). The record here, however, discloses the likelihood that all of the defendants may have been severely prejudiced. Further, there is a total absence of proof of any effective waiver.

The plea offered to defendant Dell was conditioned on his testifying for the prosecution against the other codefendants. On the advice of attorney Gold he rejected the offer of a plea to a class D felony and the prosecution's recommendation of youthful offender status, and proceeded to trial. He was convicted of first degree rape, a B felony and has been sentenced to an indeterminate term of 4 to 12 years. Youthful offender treatment was denied.

It would serve no purpose to speculate at this juncture, with the benefit of hindsight sharpened by knowledge of the jury verdict and the court's sentence, as to what advice Dell might have received concerning the plea from a capable attorney representing him alone and devoted solely to protecting his interests. There can be no question, however, that in making the crucial decision of whether to accept or reject the offer, Dell had a constitutional right to legal assistance and counsel on which he could rely. Under the circumstances, it seems inconceivable that attorney Gold, confronted as he was, with a situation posing a conflict of interests of the most flagrant sort, could have given such advice or have even attempted to do so,[1] because the advice to accept the plea and testify for the prosecution would have been highly injurious to Seger and Sims and directly contrary to their interests. The prejudice to Dell, thus, appears obvious.

Nor can it be said that the court, after it recognized the possibility of a conflict, made a sufficiently careful and thorough inquiry of Dell to assure that his decision to proceed with attorney Gold was an informed one. It did not, at any time, "ascertain, on the record, whether [Dell had] an aware-

---

1. It is fundamental that a lawyer owes a duty of undivided loyalty to his client and "that the 'assistance of counsel' guaranteed by the Sixth Amendment contemplates that such assistance be untrammeled and unimpaired" *(Glasser v United States,* 315 US 60, 70) by the representation of conflicting interests. The Code of Professional Responsibility as promulgated by the American Bar Association and adopted by the New York State Bar Association, provides: "If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. He should resolve all doubts against the propriety of the representation. A lawyer should never represent in litigation multiple clients with differing interests; and there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests. If a lawyer accepted such employment and the interests did become actually differing, he would have to withdraw from employment with likelihood of resulting hardship on the clients; and for this reason it is preferable that he refuse the employment initially." (Code of Professional Responsibility, EC 5-15.)

ness of the potential risks involved in that course and [had] knowingly chosen it." *(Gomberg, supra,* pp 313-314.) The court's inquiries concerning the conflict were answered not by Dell but by attorney Gold. Nor was the court assured by Mr. Gold, "that he had fully discussed the potentiality of conflict with his clients and received their continued approbation." *(People v Gomberg, supra,* p 314.) Indeed, it does not appear in the record that there had been any discussion of the subject between counsel and the clients. (Compare the repeated careful and searching inquiries made by the court concerning possible conflicts resulting from joint representation of multiple defendants in *United States v Wisniewski,* 478 F2d 274, 283.)

Further, and again with the benefit of hindsight, the decision to have Dell testify, considering only the interests of Sims and Seger, appears to have been nothing short of disastrous.[2] Dell's testimony placed both Sims and Seger at the scene of the crime at about the time that it allegedly took place. Had Seger and Sims been represented by their own attorneys, Dell could have been cross-examined. Attorney Gold could not cross-examine his own client, but was forced to resort to an effort to explain away Dell's testimony on summation (see *United States v De Berry,* 437 F2d 448, 453, *supra).* As stated, the only colloquy between the court and Sims and Seger concerning the conflict of interests occurred after the trial. By this time the damage had been done.

■ Thus, because of the prejudice resulting to each defendant and the absence of a knowing and intelligent waiver by any one of them, the constitutional rights of all three defendants to the assistance of counsel were "substantially impaired" by attorney Gold's attempt to represent them jointly (see *People v Gomberg,* 38 NY2d 307, *supra; United States v De Berry, supra; Glasser v United States,* 315 US 60, *supra).* There is on this record, more than a reasonable possibility that this constitutional error contributed to defendants' con-

---

2. "The decision whether a defendant should testify may be unduly affected by the risk that his testimony may develop so as to disclose matters which are harmful to the other defendant or which conflict with the other defendant's story. The attorney's freedom to cross-examine one defendant on behalf of another will be restricted where the attorney represents both defendants. And if, where two defendants are represented by the same attorney, one defendant elects to take the stand and the other chooses not to, the possible prejudice in the eyes of the jury to the defendant who does not take the stand is almost inescapable." *(Morgan v United States,* 396 F2d 110, 114.)

victions *(People v Crimmins,* 36 NY2d 230, 237). Accordingly, the convictions should be reversed, and a new trial granted.

It was not error for the court to deny defendants' motions to dismiss at the close of the People's case. In view of the foregoing determination it becomes unnecessary to pass on the other grounds asserted by appellants for ordering a new trial, including deprivation of their right to counsel due to inadequate preparation and ineffective representation during the trial.

CARDAMONE, J. P., SIMONS, DILLON and DENMAN, JJ., concur.

Judgments unanimously reversed, on the law and facts, and a new trial granted.