STATE of Minnesota, Respondent,

v.

Rodney Roy RAY, Appellant.

No. 47782.

Supreme Court of Minnesota.

Dec. 15, 1978.

C. Paul Jones, Public Defender, Kathy A. King, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Gary W. Flakne, County Atty., Vernon E. Bergstrom, David W. Larson and Lee W. Barry, Asst. County Attys., Minneapolis, for respondent.

WAHL, Justice.

Defendant was found guilty by a district court jury of charges of burglary and aggravated assault,[1] and was sentenced by the trial court to consecutive maximum indeterminate terms of 20 years for burglary and 10 years for the aggravated assault. On this appeal from judgment of conviction defendant contends that the trial court erred in the admission of certain evidence, that there was insufficient evidence of guilt, and that he was denied effective assistance of counsel. We affirm.

The victim in this case, George Sherwood of Bloomington, was awakened in his apartment early on December 6, 1976, by two intruders, one of whom fired a .410 shotgun at him from close range, nearly killing him. The state's contention at defendant's trial was that defendant and one Russell Swort, who has never been charged, were the two intruders and that the events leading to the burglary and the shooting had their genesis in a prior criminal transaction involving Sherwood, Swort, and defendant.

Specifically, the state's evidence against defendant showed (1) that Sherwood had bought stolen goods from Swort and that

---

1. The jury found defendant not guilty of attempted first-degree murder. The prosecution and the defense agreed that no lesser degrees of attempt should be submitted.

defendant had at least been involved to the extent of receiving one of the payments for the goods, (2) that Sherwood, when arrested and charged with misdemeanor receiving stolen goods, an offense to which he pleaded guilty, had implicated Swort and defendant, (3) that on the night before the shooting Swort and defendant learned for the first time that Sherwood had implicated them and had stated that they "might pay him a visit," (4) that Sherwood identified defendant as the man who shot him but did not see the other intruder clearly, (5) that Swort and defendant were wearing clothes that matched the description of clothing worn by the intruders, (6) that Swort was driving a car that night which matched the description of the car used by the intruders, and (7) that Swort owned a gun which was similar to the gun used to shoot Sherwood. Defendant did not take the stand nor present any evidence.

▓▓ The evidentiary issues do not merit detailed discussion. The evidence against defendant was extremely strong, and there is no merit to the argument that certain evidence was wrongfully admitted. The other-crime evidence was clearly admissible to show the nature of the prior relationship of Swort and defendant with Sherwood and to show that they had motives or reasons for doing what the state contended they did. See, *State v. Johnson*, 256 N.W.2d 280 (Minn.1977); *State v. Schweppe*, 306 Minn. 395, 237 N.W.2d 609 (1975); *State v. Martin*, 293 Minn. 116, 197 N.W.2d 219 (1972). The evidence of defendant's participation in this prior offense was also sufficiently clear and convincing. The evidence seized from Swort's house was properly admitted because by connecting Swort to the crime it also tended to connect defendant to the crime. See, *State v. Thompson*, 300 Minn. 220, 218 N.W.2d 760 (1974); *State v. Jackson*, 275 Minn. 462, 147 N.W.2d 689 (1967).

▓▓ The troubling issue is the issue relating to the adequacy of representation. The problem stems from the fact that shortly after their arrests Swort and defendant retained the same private counsel to represent them. For reasons that are unclear,

the state never charged Swort. However, as we have indicated, defendant was charged with attempted first-degree murder, burglary, and aggravated assault. There is no evidence whatever that at trial Swort's and defendant's interests were in conflict. In fact, any evidence tending to connect Swort to the crime also tended to prove defendant's guilt. But defendant contends that there was a conflict which existed before the trial. This conflict surfaced when the prosecutor offered to let defendant plead to a single charge of aggravated assault in exchange for his turning state's evidence against Swort. Defendant contends that if defense counsel had been solely obligated to him he might well have persuaded defendant to accept the offer. Defendant points out that, as it was, defense counsel could not do this because to do so would be to breach a continuing ethical obligation he had to Swort, who had also retained him to represent him in case any charges were brought against him.

The issue came to light at the pretrial omnibus hearing as follows:

"THE COURT: You want to put something of record, Mr. Fine?

"MR. FINE: Yes. I want the record to note that about one week or ten days ago I had a discussion with the County Attorney's office, got a blank—Brink, I'm sorry, with Mr. James—

"THE COURT: John Brink.

"MR. FINE: John Brink, and that we, in discussing the case he submitted to me an offer that they would drop two charges if the defendant would plead guilty to the Aggravated Assault and if he would further turn State's evidence against one Russell Swort.

"I did pass that message on and discussed that with Mr. Ray and pointed out to him that I had previously, in relation to this same matter, represented Swort. I told him to think about it, come to his own decision on it, and that if he did choose to take that he would then have to have other counsel.

"THE COURT: In this case?

655

"MR. FINE: Yes, in this case, because of the conflict I had between representing Swort and him.

"It's my understanding the defendant said he wasn't willing to do that, that he didn't want to take an Aggravated Assault guilty plea and turn State's evidence as—without at this time saying that there was any merit to that, to his even turning State's evidence. We didn't discuss that, is that correct?

"THE DEFENDANT: That's correct.

"MR. BRINK: With the exception, Your Honor, I would not characterize my conversation with Mr. Fine as being a formal offer of the agreement that we outlined, but we did have a very definite discussion along that line, and I was definitely interested in knowing whether Mr. Ray would be interested in such a proposition.

"Other than that, I agree with what Mr. Fine has said.

"MR. FINE: Fine, I have no argument with that.

"THE COURT: That's all you wanted to put on the record?

"MR. FINE: Yes, sir."

We believe that if the procedures set forth in *State v. Olsen,* 258 N.W.2d 898 (Minn.1977), relating to the protection of defendants against the dangers of dual representation had been in effect, the district court would have been obligated to intervene in this case. The ethical dilemma presented is one of the specific examples of the problem of dual representation given in the comments to § 3.5 of the A.B.A. Standards on the Defense Function:

"Beyond the obligation of disclosure, there are situations in which the lawyer's independent representation of his client is so inhibited by conflicting interests that even full disclosure and consent of the client may not be an adequate protection. ABA Code DR6–106 [5–106]. In criminal cases this most frequently occurs where the lawyer undertakes the defense of more than one co-defendant. In many instances a given course of action may be advantageous to one of the defendants but not necessarily to the other. *The prosecutor may be inclined to accept a guilty plea from one of the co-defendants, either to a lesser offense or with a lesser penalty or other considerations; but this might harm the interests of the other defendant. The contrast in the dispositions of their cases may have a harmful impact on the remaining defendant; the one who pleads guilty might even, as part of the plea agreement, consent to testify against the co-defendant.  * * * "* (Italics supplied.)

Defense counsel here had a conflict of interest which prevented him from advising defendant to accept the plea offer. To do so would have been to breach the continuing obligation he owed Swort, who had also retained him to represent him in connection with the incident and any charges which might be filed against him. If defendant had accepted the offer and turned state's evidence, he would have received a single term of 10 years in prison, not the consecutive terms of 20 and 10 he received after trial.

The difficulty is not in determining that there was a conflict in this case but in determining what relief, if any, is appropriate. One thing that is clear is that no purpose would be served by granting defendant a new trial. Defendant had a fair trial, and the jury, on strong evidence, found him guilty. It also seems likely that the original bargain offered defendant is no longer a possibility, because under the circumstances the state would probably be barred on due process grounds from commencing a prosecution against Swort at this late date. Letting defendant plead guilty to the reduced charge without having to turn state's evidence would not seem fair, since there is a possibility that no amount of persuasion by his attorney would have convinced him to turn state's evidence.

But to offer no relief would be just as unfair as it would be to let defendant have the benefit of the proposed negotiations without giving up anything. Our conclusion is that defendant's conviction must be affirmed but that defendant should be free

to institute postconviction proceedings for the purpose of establishing with certainty exactly what happened. If defendant can show that he would have been able to take advantage of the negotiations (i. e., if defendant admits his own guilt in sufficient detail and can show that he also would have been able to implicate Swort) and if defendant can demonstrate that he would in fact have accepted the offer if his counsel had advised him to do so, then we believe postconviction relief in the form of a reversal of the 20-year burglary sentence, leaving defendant with a 10-year sentence for aggravated assault, would be justified under the unique circumstances of this case.

Affirmed.