611 A.2d 1081

**Michael GEE and Guy Coffey**

v.

**STATE of Maryland.**

**No. 1466, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

Sept. 4, 1992.

David Pasti and James M. Peelman, Rockville, for appellant, Coffey.

Bradford C. Peabody, Asst. Public Defender and Stephen E. Harris, Public Defender, on the brief, Baltimore, for appellant, Gee.

Ann N. Bosse, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Stuart O. Simms, State's Atty., for Baltimore City, on the brief), Baltimore, for appellee.

Argued before WILNER, C.J., and MOYLAN and HARRELL, JJ.

MOYLAN, Judge.

The appellants, Michael Gee and Guy Coffey, were charged in separate criminal informations with divers narcotics violations. At a joint trial, a Baltimore City jury convicted both Gee and Coffey of possession of heroin; Coffey was also convicted of battery and resisting arrest. The trial court sentenced Gee to four years imprisonment and Coffey to a total of 18 years imprisonment. Upon this joint appeal, each of the appellants raises the single contention:

That the trial court erred when it refused to allow defense counsel to terminate his representation of Michael Gee.

Our consideration of this issue does not require a detailed recitation of the facts of the crime. It is sufficient to note that on December 13, 1990, at approximately 8:45 a.m., two Baltimore City police officers—Daniel Brown and Kevin Sewell—were on routine patrol "when they saw defendant Guy Coffey receive money from Mr. Gee and give [Gee] a glassine bag with a white powdered substance." A brief chase ensued, which concluded with the apprehension and arrest of the two appellants. A search of Gee's person yielded a glassine bag containing a quantity of what was later identified as heroin, while Coffey was found to be in possession of $138 in cash. Gee was initially charged with possession of heroin and conspiracy to violate the narcotics laws. Coffey was charged with possession of heroin, battery and resisting arrest.

On July 11, 1991, a pretrial hearing was held in the Circuit Court for Baltimore City. At the hearing the appellants were represented by Gordon Tayback, a public defender. Tayback informed the court that he was representing both Gee and Coffey. He then called the court's attention to what he perceived to be a conflict of interest emanating from that joint representation. He advised the court:

"I have had discussions with the state's attorney today and based on a request made by the state's attorney as to

a possible plea by Mr. Gee and possible acknowledgement by him of certain information there is a substantial potential conflict of interest."

Discussion among the court, defense counsel, and the prosecutor—Asa Shawan Rose—revealed that, as to Gee, the State was willing to recommend a sentence of seven months in the Baltimore City Jail. That recommendation, however, was contingent upon: 1) Gee's pleading guilty to both charges and 2) Gee's acknowledgment that the State's statement of facts—which specified that Coffey sold the heroin to Gee—was accurate. The critical part of the colloquy was:

"Defense: I have indicated to the state the possibility of working out a guilty plea as to possession of heroin. That's always been the situation ... The kicker, if you will, is the concern by the state that he acknowledge the offense report is true ...

\* \* \* \* \* \*

Defense: [I]f he wishes ... to proceed on the basis that is in accord with what the state is requesting, then I have a conflict.... I cannot advise [Gee] further because of the conflict between [Gee and Coffey].

\* \* \* \* \* \*

Defense: I haven't even gone further with the state on that. I can't really represent Mr. Gee effectively where he has a potential benefit if he cooperates against Mr. Coffey.

Court: You're telling me you can't effectively assist him, but I don't believe that's correct, Mr. Tayback. That's a defense position which the court rejects. Now, Mr. Rose, what is the offer to Mr. Coffey, first of all?

State: Okay, Your Honor ... The offer to Mr. Gee was 7 months to the Department of Correction.

Court: The offer is for the state for seven months or a guilty plea. The question is, do you want to accept or reject that [Mr. Gee]?

Defendant: I accept it.

Court: If you accept that, do you accept what Mr. Rose said as an accurate statement of the facts in this case?
Defendant: —like he said, though.
Court: Well, if you don't agree with those facts then I'm not going to put you in that position . . .

\*  \*  \*  \*  \*  \*

Court: Mr. Gee, the court will not accept any guilty plea under those circumstances . . . and your request to a trial by jury will be granted.

\*  \*  \*  \*  \*  \*

Defense: If there's a claim of conflict, Your Honor, the court [cannot]—in all good conscience allow poor Mr. Gee to go to trial in a situation where there is a conflict of interest in our—.

\*  \*  \*  \*  \*  \*

Defense: [I]f [Mr. Gee] agreed to the statement of facts, which would indicate that the statement of facts was true and in essence, therefore, that Mr. Coffey distributed the controlled dangerous substance to him.

That's really where both my potential conflict if not actual conflict of interest comes up as well as the difficulty in going ahead with the plea on his behalf.

\*  \*  \*  \*  \*  \*

Defense: [O]nce Mr. Rose says 'I want you as part of that plea agreement to also have him plead guilty to the second count,' then I'm placed in the position where I can represent Mr. Gee because its conspiracy of the two, or I can represent Mr. Coffey but I don't see how I can represent both because if I have Mr. Gee say, 'Yes, I did conspire with your other client, Mr. Coffey, to violate the law' then I'm not representing Mr. Coffey.

If I represent Mr. Coffey and sit and tell Mr. Gee, 'no you can't plead guilty to that,' then I'm being unfair to Mr. Gee because he has the potential, I think—well, I know the state did file a subsequent offender status of his past record so he has the potential to get eight years instead of seven months.

That's what I think is the difficulty that I'm indicating to the court.

\*  \*  \*  \*  \*  \*

Defense: I can't advise Mr. Gee to do so or not to do so because that is in conflict with Mr. Coffey's position, where I would want him to be a witness for Mr. Coffey. But that's a very beneficial plea to Mr. Gee. If I were representing Mr. Gee alone I would indicate to him, 'Don't testify for anybody. Take the plea.' So there's a problem.

Court: I think I'm in the position where I must say there is no conflict because a guilty plea is not a matter of right, Mr. Tayback...."

The trial court determined that defense counsel's representation of Gee and Coffey did not give rise to a conflict of interest. Having so concluded, the court directed Tayback to represent both appellants for the duration of the trial. After the pretrial hearing was concluded, the appellants were tried jointly. The appellants now contend that because their attorney was laboring under a conflict of interest, they were denied effective assistance of counsel. We agree.

"The guarantees of the Bill of Rights are the protecting bulwarks against the reach of arbitrary power. Among those guarantees is the right granted by the Sixth Amendment to an accused in a criminal case 'to have the assistance of counsel for his defense.'" *Glasser v. United States*, 315 U.S. 60, 69, 62 S.Ct. 457, 464, 86 L.Ed. 680 (1942). That guarantee encompasses "more than a minimum level of professional competence; even otherwise competent trial lawyers may sometimes find themselves in a position in which they are unable to render effective assistance of counsel." *United States v. Alvarez*, 580 F.2d 1251, 1254 (5th Cir.1978). Hence, where defense counsel in a criminal trial represents "one of several clients with conflicting interests, his effectiveness as a vigorous advocate for a

particular defendant may be impaired by his commitment to other defendants." *Id.*

The law is well settled, however, that "[r]equiring or permitting a single attorney to represent codefendants, often referred to as joint representation, is not a per se violation of constitutional guarantees of effective assistance of counsel." *Holloway v. Arkansas,* 435 U.S. 475, 482, 98 S.Ct. 1173, 1177, 55 L.Ed.2d 426, 433 (1978). *See Austin v. State,* 327 Md. 375, 609 A.2d 728 (1989); *Brown v. State,* 10 Md.App. 215, 221, 269 A.2d 96 (1970) ("[M]ere joint representation without more, of two or more defendants by one attorney is not a conflict of interest."); *Bauckman v. State,* 9 Md.App. 612, 623, 267 A.2d 309 (1970); *Pressley v. State,* 220 Md. 558, 562, 155 A.2d 494 (1959) ("[T]hat the same lawyer represented the two defendants is not of itself error.").

It is equally beyond dispute that the Sixth Amendment right to counsel is breached and "effective representation is lacking ... if counsel, unknown to the accused and without his knowledgeable assent, is in a duplicitous position where his full talents—as a vigorous advocate having the single aim of acquittal by all means fair and honorable—are hobbled or fettered or restrained by commitment to others." *Alvarez,* 580 F.2d at 1254. "[T]he Sixth Amendment right to counsel includes the right to effective assistance free of conflicts of interest, and in the case of a single attorney representing multiple defendants, free from conflicting interests among each of the defendants." *Hoffman v. Leeke,* 903 F.2d 280, 285 (4th Cir.1990). *See State v. Hunt,* 26 Md.App. 417, 421–423, 338 A.2d 95 (1975); *Caddie v. Warden,* 3 Md.App. 192, 194, 238 A.2d 129 (1968).

There is, concededly, "no precise test as to when the possible conflict of interest inherent in dual or multiple representation will become an actual conflict of interest." *Austin,* 327 Md. at 386, 609 A.2d 728. Despite the Supreme Court's admonition in *Glasser v. United States,* 315 U.S. at 76, 62 S.Ct. at 467, "against 'nice calculations as to the amount of prejudice,' many courts have continued to use

prejudice as the standard for reversal, and their 'nice calculations' have resulted in such divergent definitions and applications that there is virtually no discernible standard." Note, *Criminal Codefendants and the Sixth Amendment: the Case for Separate Counsel,* 58 Geo.L.J. 369, 379 (1969). In *Brown v. State, supra,* this Court, speaking through Judge Thompson, set out three key questions, the use of which will resolve most conflict of interest cases:

"I. Is an actual or imminent conflict of interest present?

II. Given an actual or imminent conflict of interest in existence,

a. What quantum of prejudice must exist before there is reversible error?

b. Does that amount of prejudice exist in the present case?

III. What responsibility, if any, is on the trial court to raise the conflict of interest *sua sponte?*"

*Brown,* 10 Md.App. at 220–221, 269 A.2d 96. In *Kent v. State,* 11 Md.App. 293, 295, 273 A.2d 819 (1971), we discussed the "quantum of prejudice" which must exist in order for there to be reversible error:

"In order to support a finding that a criminal defendant has been denied effective assistance of counsel because of a conflict of interest, the record must disclose that either an actual conflict of interest existed or that a conflict of interest was 'imminently potential.' *Pressley v. State,* 220 Md. 558 [155 A.2d 494]. Given such a situation where an actual or imminent conflict of interest is shown to exist, there must be a further showing that some prejudice to the accused resulted, although such prejudice need only be slight and the requirement is satisfied if it is demonstrated 'that counsel was not as effective as he might have been had the conflict not existed.' *Brown v. State,* 10 Md.App. 215, 227 [269 A.2d 96]."

We "took a firm stand, in line with both *Pressley* and *Glasser,* that with respect to prejudice to the party asserting the presence of a conflict that the prejudice need only

be slight before relief is granted." *State v. Hunt,* 26 Md.App. 417, 423, 338 A.2d 95 (1975). We had stated in *Brown:*

> "In Maryland, *Pressley v. State* indicates that to merit relief there must be prejudice which prevents the lawyer from impartially and adequately representing his client. . . .
>
> This Court feels the better position, in line with both *Pressley* and *Glasser,* is that there must be a showing of some prejudice but the prejudice need only be slight before relief is required. While *Pressley* requires a showing of prejudice, *Glasser* is written in terms too specific to require more than slight prejudice. Hence, the Supreme Court granted a new trial since the representation of *Glasser* 'was not as effective as it might have been . . .' Thus, this Court holds that once an actual or imminently potential conflict of interest is shown, the only demonstration of prejudice that is required is that counsel was not as effective as he might have been had the conflict not existed."

10 Md.App. at 227, 269 A.2d 96.

■ Our initial task in the case before us is to determine whether an "actual or imminent conflict of interest" was present. Should we locate such conflict, we then must gauge the effect, if any, it may have had on the appellants' representation. The precise fact pattern we encounter here is of first impression in the appellate courts of this State. We look, therefore, to our sister jurisdictions for persuasive light.

In *People v. Dell,* 60 A.D.2d 18, 400 N.Y.S.2d 236 (1977),[1] New York's intermediate appellate court faced a factual scenario remarkably similar to that now before us. In *Dell,*

---

**1.** Cited with approval by the New York Court of Appeals in *People v. Mattison,* 67 N.Y.2d 462, 503 N.Y.S.2d 709, 713, 494 N.E.2d 1374, 1378 (1986) ("[A] plea by one defendant in exchange for testimony against the other in the same matter is virtually certain to place lawyers involved in representing both in an untenable position.").

three defendants—Keith Dell, Cliff Seger, and Fred Sims—were convicted of rape. During trial, all three defendants were represented by the same attorney—Benjamin Gold. "Prior to commencement of the trial and during a colloquy [among] the court and the assistant district attorney, the defendant Dell, Dell's father and Attorney Gold concerning a plea bargain, the court inquired about the apparent conflict of interests arising from Gold's joint representation of the three defendants and the possibility of resultant prejudice to Dell." *Id.* 400 N.Y.S.2d at 238. The prosecutor had previously made a formal offer, on the record, of a plea to a reduced charge of rape in the second degree, with a recommendation of Youthful Offender treatment. The offer was, however, contingent upon Dell's agreeing to testify against the other two defendants. Dell refused the offer.

On appeal, Dell contended, *inter alia,* that he had been deprived of his constitutional right to effective assistance of counsel and a fair trial "because of conflicts of interests" resulting from his attorney's efforts to represent the three defendants jointly. The New York appellate court agreed. Employing unambiguous language it stated at 400 N.Y.S.2d at 239:

"The plea offered to defendant Dell was conditioned on his testifying for the prosecution against the other co-defendants. On the advice of Attorney Gold he rejected the offer of a plea to a Class D felony and the prosecution's recommendation of youthful offender status, and proceeded to trial. He was convicted of first degree rape, a B felony and has been sentenced to an indeterminate term of four years. . . .

It would serve no purpose to speculate at this juncture, with the benefit of hindsight sharpened by knowledge of the jury verdict and the court's sentence, as to what advice Dell might have received concerning the plea from a capable attorney representing him alone and devoted solely to protecting his interests. There can be no question, however, that in making the crucial decision of whether to accept or reject the offer, Dell had a constitu-

tional right to legal assistance and counsel on which he could rely. *Under the circumstances, it seems inconceivable that Attorney Gold, confronted as he was, with a situation posing a conflict of interests of the most flagrant sort, could have given such advice or have even attempted to do so,* because the advice to accept the plea and testify for the prosecution would have been highly injurious to Seger and Sims and directly contrary to their interests. *The prejudice to Dell, thus, appears obvious."* (emphasis supplied) (footnote omitted).

Having determined that Dell's constitutional right to the assistance of counsel had been "substantially impaired," the court reversed Dell's conviction and granted a new trial. *Id.* 400 N.Y.S.2d at 240.

The Court of Appeal of California reached a similar result in *People v. Superior Court (Mroczko)*, 94 Cal.App.3d 626, 156 Cal.Rptr. 487 (1979). In *Mroczko*, two prison inmates, Richard Mroczko and Thomas Brindle, were charged with the murder of a third inmate, Jay Love. Both defendants were assigned the same public defender—Attorney Umhofer—to represent them at trial. Prior to trial, the State filed a motion to disqualify in an effort to have the court appoint separate counsel for the two defendants. The State based its motion on "an alleged conflict of interest of the public defender." *Id.* at 628, 156 Cal.Rptr. 487. That conflict of interest "arose because [the prosecutor] offered [the defendants] 'inconsistent' plea bargain offers." *Id.* The prosecutor defined an inconsistent plea offer as an offer "to have one defendant plead to a lesser charge in exchange for his testimony against the other defendant." The prosecutor then stated that such an offer had been formally made to the public defender in the case.

The lower court denied the State's motion to appoint separate counsel. The State then sought a writ of mandate in the Court of Appeal, directing the trial court to grant its motion for separate counsel. The appellate court held that the trial court had abused its discretion in failing to appoint separate counsel:

"We hold that a conflict of interest arose from this offer which prevents the public defender from effectively representing the client to whom the offer was made (hereafter 'offeree') regarding the offer. (See *Holloway v. Arkansas* (1978) 435 U.S. 475 [489–90, 55 L.Ed.2d 426, 98 S.Ct. 1173, 1181]; *People v. Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859]; *People v. Angulo* (1978) 85 Cal.App.3d 514, 519 [148 Cal.Rptr. 517].) The public defender cannot ethically advise the offeree to accept the offer or otherwise advise him in any manner which might encourage a decision to accept the offer—to do so would be directly adverse to the interests of his other client. Conversely, counsel necessarily acts against the interests of the offeree if he advises rejection of an offer which should be accepted.

... *[T]he public defender has a present conflict of interest which precludes effective representation regarding the plea offer....* Respondent court abused its discretion in failing to appoint separate counsel absent ... a waiver. Petitioner is therefore, entitled to appropriate relief." (citations omitted) (emphasis added).

*Id.* at 629–630. The court then issued an order directing the trial court to conduct a hearing to determine whether the defendants were willing to waive the public defender's conflict of interest. A hearing was held and the appellants agreed to waive their attorney's conflict of interest. They stood trial and were convicted of first and second degree murder respectively.

The appellants appealed to the California Supreme Court. In a thoroughly analyzed opinion, *People v. Mroczko*, 35 Cal.3d 86, 197 Cal.Rptr. 52, 65, 672 P.2d 835, 847–848 (1983), the state's highest court cited with approval the earlier decision of the Court of Appeal. Noting that the plea bargain offered by the State "obviously placed counsel in an untenable position," the Court stated that "The Court of Appeal's pretrial decision focused on this offer, correctly noting that '[t]he public defender cannot ethically advise [the defendant-offeree] ...' " *Id.* *See People v. Dooley,*

112 Cal.App.3d 103, 169 Cal.Rptr. 76, 81–82 (1980) ("[A]ctual, demonstrative conflict of interest occurs" where one defendant offered an opportunity to plead guilty to lesser charge in return for testifying against co-defendant.").

The Supreme Court of Utah looked to the California Court of Appeal's *Mroczko* decision when it considered an analogous set of circumstances in *State v. Smith*, 621 P.2d 697 (Utah 1980). There, Smith was charged with arson and burglary jointly with another. A public defender was appointed to represent both defendants. Shortly thereafter, the public defender appeared with the codefendant at a hearing at which Smith was not present. At that hearing, the codefendant pled guilty to attempted burglary and the charge of arson against him was dismissed. In exchange, the codefendant agreed to testify against Smith. Smith was then tried and convicted of both arson and burglary.

Smith appealed his convictions, asserting that he had been denied the effective assistance of counsel. The Utah Supreme Court agreed. Quoting extensively from California's *Mroczko* decision, the court held at 621 P.2d at 698:

> "That a conflict of interest arose is clearly shown by this record....
>
> [The public defender] chose to advise [the codefendant], the offeree, thereby adversely affecting the interests of defendant, his other client. He was not effectively assisting this defendant; he was not identifying with his interests. This conflict was not remedied....
>
> ....
>
> Defendant seeks a reversal of his conviction and a new trial. We agree that a new trial is necessary and this case is remanded for that purpose."

In *State v. Ray*, 273 N.W.2d 652, 654 (Minn.1978), the Supreme Court of Minnesota addressed the "adequacy of representation issue" in a factual context closely mirroring that of the instant case. In *Ray*, the appellant had been found guilty of burglary and aggravated assault. He con-

tended that he had been denied the effective assistance of counsel.

Shortly after their arrests, the appellant and one Russell Swort had retained the same private counsel to represent them. Swort, for reasons that were not explained, was never charged. On appeal, the appellant contended that the conflict had "surfaced when the prosecutor offered to let [the appellant] plead to a single charge of aggravated assault in exchange for his turning state's evidence against Swort." *Id.* at 659. The defendant there, as the appellant here, declined to accept the offer to turn State's evidence. He contended on appeal that if defense counsel had been solely obligated to him "he might well have persuaded the appellant to accept the offer." *Id.* at 654. He asserted that "as it was, defense counsel could not do this because to do so would be to breach a continuing ethical obligation he had to Swort, who had also retained him to represent him in case any charges were brought against him." *Id.*

The Minnesota Supreme Court held that the appellant had been denied the effective assistance of counsel. The Court initially noted that:

"The ethical dilemma presented is one of the specific examples of the problem of dual representation given in the comments to § 3.5 of the A.B.A. Standards on the Defense Function:

'Beyond the obligation of disclosure, there are situations in which the lawyer's independent representation of his client is so inhibited by conflicting interests that even full disclosure and consent of the client may not be adequate protection. In criminal cases this most frequently occurs where the lawyer undertakes the defense of more than one co-defendant. In many instances a given course of action may be advantageous to one of the defendants but not necessarily to the other. The prosecutor may be inclined to accept a guilty plea from one of the co-defendants, either to a lesser offense or with a lesser penalty or other considerations; but this might harm the interests of the other

defendant. The contrast in the dispositions of their cases may have a harmful impact on the remaining defendant; the one who pleads guilty might even, as part of the plea agreement, consent to testify against the co-defendant....'" (emphasis in original).

*Id.* at 655. The Court then concluded that a constitutionally significant conflict of interest had infected defense counsel's representation of the appellant:

"Defense counsel here had a conflict of interest which prevented him from advising [the appellant] to accept the plea offer. To do so would have been to breach the continuing obligation he owed to Swort, who had also retained him to represent him in connection with the incident and any charges which might be filed against him. If [the appellant] had accepted the offer and turned state's evidence, he would have received a single term of 10 years in prison, not the consecutive terms of 20 and 10 he received after trial."

*Id. See also Mercer v. State,* 290 N.W.2d 623 (Minn.1980).

The Fifth Circuit Court of Appeals treated the subject of multiple representation during plea bargaining and the potential for conflict inherent therein in *Alvarez v. Wainwright,* 522 F.2d 100 (5th Cir.1975). There, Alvarez was charged and tried with codefendants De La Cruz and Torres. Attorney Gino Negretti was retained by both the appellant and De La Cruz. Shortly after the trial commenced, the Assistant State Attorney spoke with Negretti and offered the appellant a sentence of six months in the county stockade in exchange for a guilty plea and testimony for the state against De La Cruz and Torres. Negretti informed the appellant of the plea offer but advised him against it "on the grounds that [the appellant] had a meritorious defense and that [the appellant's] testimony would be detrimental to De La Cruz, Negretti's co-client." *Id.* at 102.

The appellant rejected the plea offer, did not testify, and was found guilty and sentenced to twenty-five years in prison. After an unsuccessful appeal to the Florida appellate courts, Alvarez, through new counsel, filed a petition

for *habeas corpus* with the federal district court. At the hearing, Alvarez contended, as he had in state court, that he had been denied the effective assistance of counsel. The district court agreed. It concluded that because the appellant's attorney also represented another defendant, his advice to the appellant was based on the purpose of protecting the codefendant and that this "conflict of interest constituted a breach of legal duty." The Court of Appeals affirmed the trial court's decision, noting that "by urging rejection of the bargain and advising him against testifying Negretti was protecting the co-defendant at the risk of great harm to Alvarez." *Id.* at 106.

The academic authorities are in complete accord. *See* Tague, *Multiple Representation of Targets and Witnesses During a Grand Jury Investigation,* 17 Am.Crim.L.Rev. 301, 312 (1980) ("[I]n approaching counsel's clients to offer a bargain, the government has precipitated a conflict. Counsel should withdraw from representing all clients at that point."); Note, *Criminal Codefendants and the Sixth Amendment: The Case for Separate Counsel,* 58 Geo.L.J. 369, 379 (1969); J.G. Cook, *Constitutional Rights of the Accused* § 7:19 (1986 & Supp.1991). In his article on the relationship between conflicts of interest and successive representation by criminal lawyers, Professor Gary T. Lowenthal observed that:

"[C]onflict of interest problems ... may result from the simultaneous representation of the witness and defendant in the pre-trial stages of a case. If the lawyer represents both clients before the witness enters a guilty plea, the conflict of interest is especially great. It is in the defendant's interest for the potential witness to plead not guilty and remain unavailable to the government. Counseling the witness to enter a guilty plea is tantamount to contributing to the government's evidence against the remaining defendant. Similarly, the lawyer's representation of the potential prosecution witness during the pretrial stage of the defendant's case often affects the defendant's own opportunities to plead guilty to a re-

duced charge in return for cooperation with the government.

. . . .

Some courts hold that when a lawyer represents codefendants, an offer from the prosecution for one client to plead guilty in return for cooperation against the remaining client or clients *automatically* creates a conflict of interest." (citations omitted) (emphasis in original).

Lowenthal, *Successive Representation By Criminal Lawyers*, 93 Yale L.J. 1, 34 n. 141 (1983). Moore, *Conflicts of Interest in the Simultaneous Representation of Multiple Clients: A Proposed Solution to the Current Confusion and Controversy*, 61 Tex.L.Rev. 211, 219 (1982), writes:

"From indictment through trial and sentencing, the legal positions of the codefendants can diverge as a result of either factual antagonism or more subtle differences that an independent attorney might exploit in comparing and contrasting the individual codefendants. The following summary describes some of the more obvious points of divergence.

In the plea bargaining process, the prosecutor will often negotiate with one codefendant, offering a reduced charge, immunity or even a dismissal, in exchange for testimony against the remaining defendants or other cooperation with the government. *A deal offered to one defendant and not to others puts a single counsel for multiple defendants in a most difficult, if not untenable position.*" (emphasis supplied).

In an exhaustive discussion of the difficulties which may inhere in the joint representation of defendants, Richard H. Girgenti, Assistant District Attorney for New York County, has noted:

"Additional conflict problems may arise after indictment but prior to trial. A defendant, recognizing his guilt, may wish to pursue the possibility of disposing of the charges against him without a trial. It is often in the defendant's best interest to cooperate with the prosecu-

tion as a witness against a codefendant in exchange for a reduced plea or recommendation of more lenient treatment at sentencing. *The assistance of independent counsel in making this determination is vital if the defendant is to make an intelligent choice. An attorney representing codefendants or associates who would be damaged by the defendant's testimony would necessarily find himself in an untenable position.* To advise a defendant-witness to cooperate would hurt his other clients. To advise a defendant-witness not to cooperate, when his best interests dictate otherwise, would be to render ineffective assistance.

... The potential problems of a conflict of interest arising during plea negotiations is especially acute because the conflict rarely, if ever, is detectable upon appellate review. As the Supreme Court recognized in *Holloway*, [435 U.S. at 491, 98 S.Ct. at 1182], 'to assess the impact of a conflict of interests on the attorney's options, tactics and decisions in plea negotiations would be virtually impossible.' " (emphasis supplied) (footnotes omitted).

Girgenti, *Problems of Joint Representation of Defendants in a Criminal Case*, 54 St. John's L.Rev. 55, 64–65 (1979).

▮ Applying that broad consensus of law to the present case, we note initially that the appellate postures of Gee and Coffey are very different from each other. Gee's argument as to ineffective assistance, the stronger of the two, is a "pat hand."

To be sure, once he elected to reject the State's offer and to press forward with a trial upon the merits, his trial strategy was not necessarily incompatible with that of Coffey. It was on this aspect that the trial judge focused as he ruled that there was no conflict. The adverse impact of not having counsel with undivided loyalty, however, hit Gee at a much earlier stage. His trial was a formality. He had no realistic defense. His counsel indeed conceded that he was in possession of heroin at the time of his arrest. Gee's certain conviction was a foregone conclusion and he, not surprisingly, received a sentence of four years. The

plea bargain, on the other hand, would have permitted him to walk away with a token sentence of merely seven months.

When still debating within himself as to whether to make such a bargain, Gee was entitled to the best advice and wise experience of single-minded counsel. Notwithstanding Gee's tentative decision to stand by his codefendant, a lawyer concerned only with Gee's temporal welfare would have read him the riot act, expatiated at length upon the folly of misguided loyalty, and persuaded him to take the "deal" and run. Gee's lawyer, because of his mutual allegiance to Coffey, however, was obviously paralyzed from giving such tactically sound advice. It was in the very failure to receive such advice that Gee was deprived of effective assistance.

The case with respect to Coffey is more problematic. Self-evidently, one does not always suffer ineffective assistance of counsel simply because counsel has a conflict. If counsel resolves that conflict by favoring one client and disfavoring another, the favored client has frequently benefited from the conflict. In the present case, the public defender's conflict prevented him from persuading Gee to make a deal and to turn State's witness against Coffey. If we were concerned only with the pretrial aspects of the conflict, therefore, we should rule that Coffey had not suffered ineffective assistance. Coffey was, quite to the contrary, the undisputed beneficiary of the conflict at that earlier stage of the proceedings.

It was, rather, at the trial stage that the conflict of interest turned to Coffey's disadvantage. This was not a case where two defendants, with a single voice, could question the reliability of a witness' identification. Nor was this a case where two defendants, with a single voice, could argue a police frameup or exploit the constitutional implications of police brutality. It was undisputed that when the police arrested the two appellants, Gee was in red-handed possession of a glassine bag of heroin. There was also

disputed testimony that a few minutes before the arrest, Coffey had been observed handing something to Gee.

The only defense that could have been asserted in this case was for each of the appellants to point an accusing finger at the other. A lawyer, equally dedicated to the fortunes of both, was frozen into inactivity because he could not aid and abet such finger-pointing. Coffey's only defense was to deny any involvement in criminal activity. An advocate championing his cause to the exclusion of all other masters would have had no compunction in assassinating Gee. "Gee alone was in possession of heroin; my client was not." A hard-hitting champion for Coffey might have flailed Gee as a known "junkie" in the neighborhood and would have insisted that the observed transfer was nothing more than Coffey's repayment of a $5.00 loan. Since the contraband was found only on the body of Gee, Coffey's only viable defense was to distance himself from Gee in every way possible, callously leaving Gee hanging out to dry in the process. Because Coffey's defender was also loyal to Gee, however, he was totally inhibited from attempting in any such fashion to "lay off the blame."

"[I]n a case of joint representation of conflicting interests the evil—it bears repeating—is in what the advocate finds himself compelled to *refrain* from doing...." *Holloway v. Arkansas*, 435 U.S. at 490, 98 S.Ct. at 1181. *See Thomas v. Foltz*, 818 F.2d 476, 482 (6th Cir.1987); *Ruffin v. Kemp*, 767 F.2d 748, 752 (11th Cir.1985). Expounding on this premise, *United States v. Alvarez*, 580 F.2d 1251, 1257 n. 7 (5th Cir.1978) observed:

 " 'When there is a conflict of interest such as exists in this case, the prejudice may be subtle, even unconscious. It may elude detection on review. A reviewing court deals with a cold record, capable, perhaps, of exposing gross instances of incompetence but often giving no clue to the erosion of zeal which may ensue from divided loyalty.' *Castillo v. Estelle*, 504 F.2d 1243, 1245 (5th Cir.1974)...."

The sin of divided loyalty, as it afflicted Coffey, was in nothing his lawyer did but in what his lawyer found himself "compelled to refrain from doing," from his unavoidable "erosion of zeal."

JUDGMENTS REVERSED; COSTS TO BE PAID BY MAYOR AND CITY COUNCIL OF BALTIMORE.